PROVOSTY, J.
Articles 214 and 201 of the Constitutipn are as follows;
“Art. 214. The Legislature shall provide for the registration of voters throughout the state.”
“Art. 201. Any person possessing the qualifications prescribed by section 3 or 4 of article *484 197 of this Constitution, who may be denied registration, shall have the right to apply for relief to the district court having jurisdiction of civil causes for the parish in which he offers to register, and the party cast in said suit shall have the right of appeal to the Supreme Court; and any citizen of the state shall have a like right to apply to said court, to have stricken off any names illegally placed on said registration rolls under sections 3 and 4 of article 197, and such applications and appeals shall be tried by said courts by preference, in open court or at chambers. The General Assembly shall provide by law for such application and appeals without cost, and for the prosecution of all persons charged with illegal or fraudulent registration or voting, or any other crime or offense against the registration or election or primary election laws.”
The sections 3 and 4 of article 197 referred to in this article 201 are those providing for the educational and property qualifications of voters. The said section 3 provides that the person offering to register under the educational qualification “shall demonstrate his ability to do so when he applies for registration by making, under oath, written application therefor, which application * * * shall be entirely written, dated and signed by him without assistance or suggestion from any person or memorandum whatever, except the form of application hereinafter set forth,” etc.
Eor carrying out these articles of the Constitution, the Legislature passed Act No. 199, p. 453, of 1S9S. Section 9 of the act carried out that part of said article 201 requiring the Legislature to provide for the bringing of suit without costs by any citizen for causing the names of voters illegally on the roll to he stricken therefrom.
In 1908, it having been thought that a new registration of voters was desirable, the Legislature passed Act 98, p. 140, of that year," the title of which reads:
“Relative to a new registration of voters ■throughout the state; to regulate the manner and mode of registering voters; to provide for the appointment of special canvassers and to provide penalties for the violation of the provisions of the act; to provide for the appointment or selection of registrars of voters throughout the state; defining their duties and powers and fixing their compensation.”
Section 13 of this act covers the same ground as section 9 of the registration act of 1898; it provides for the bringing of suits without costs by any citizen to have stricken from the registration roll the names illegally placed thereon.
Under authority of these constitutional and statutory provisions the relator in the present ease undertook to file a large number of suits in the district court of the parish of Acadia, whereof the defendant is clerk, to have stricken off from the registration roll of that parish names of persons whose registration was alleged to have been illegal for the reason that their applications to register had not been “entirely written, dated and signed” by them, as required by section 3 of article 197 of the Constitution and by act 98 of 1908. The clerk of said court, defendant in the present suit, refused to file said suits unless a deposit was made or bond given for costs, as required by law to be done in ordinary suits, and thereupon the relator filed the present suit, which prays for mandamus to the defendant to entertain said suits without costs.
The defendant assigns, as his reasons for refusing to file the said suits, that under section 4 of Act 203, p. 485, of 189S, he is entitled to require a deposit or a bond for costs, and that section 13 of said Act 98 of 1908, which authorizes the suits mentioned in it to be brought without costs, applies only to the parish of Orleans, and has no application to the country parishes; and that, moreover, said section is unconstitutional, for the double reason, first, that it violates article 122 of the Constitution, which provides that the clerk “shall receive no compensation from the state or parish for his services in criminal matters,” clearly implying that he shall receive compensation from all other litigants in all other matters; and, second, that the intention to embody such a provision in said act is not expressed in the title of the act.
[1] It is alleged in the answer that said *486 section 13 has application only to the parish of Orleans by its very terms. The reading of the section does not bear out- this assertion, since its subject-matter, namely, the bringing of suit by any citizen to cause the registration to be purged of names illegally thereon, is as pertinent to the country parishes as to the parish of Orleans, and its text contains absolutely nothing to indicate that it is to have only this restricted application.
It is also alleged in the answer that sections 1 to 15 of the act apply exclusively to the parish of Orleans, and that the only part of the act applying to the country parishes is that beginning with section 16. What foundation this assertion is based on is not mentioned in the answer; and, since the case has been submitted without argument of any kind, we are left to conjecture what may have been in the mind of the pleader in making the assertion. The only possible reason we can think of is that sections 16 to 25 of the act are set apart under the heading “Registrars of Voters Outside of the Parish of Orleans,” and that the remaining sections of the act, 26 to 44, inclusive, are set apart under the heading “General Provisions”; whereas, sections 1 to 15, inclusive, are not set apart under a separate heading.
This grouping of the sections is certainly peculiar, but it proves nothing, except, perhaps, that the act was drafted without close attention to mere form. It certainly cannot prove that the entire group of sections from. 1 to 15 have no application to the country parishes, for section 10 carries inherent proof of having such application. After having provided that a voter who has removed from the precinct in which he was registered to another precinct may have the change noted on the registration roll, it adds:
“And in the parish of Orleans a new certificate of registration shall he issued to him.”
If the body of the section had not had reference to the state at large, this addition would have been made to read simply, “And a new certificate of registration shall be issued to him”; and not, as we find it, “And in the parish of Orleans a new certificate,” etc. And this applicability of section 10 to the country parishes destroys completely the argument based upon the mere grouping of the sections.
The fact of the matter is that a careful reading of these sections 1 to 15 will show that wherever it was desired that the operation of a section should be restricted to the parish of Orleans a clause to that effect was added, unless such limitation was already clearly indicated by the subject-matter itself of the section.
If section 13 were excluded from operation, in the country parishes by reason of this peculiarity of grouping, so, for the same reason, sections 9, 10, and 12 would have to be excluded; and thus the country parishes would be left unprovided for in the important respects covered by these sections. Section 9 provides how the registrar shall proceed for purging his roll of names improperly thereon. Section 10 provides how the voter who has changed residence may have the change noted on the roll. Section 12 provides a remedy for the voter who has been denied registration. And, finally, section 13 i>rovides how any citizen may bring suit without costs for purging the roll of names improperly thereon.
We conclude that section 13 does apply to the country parishes; and pass to the question of its constitutionality.
[2] The first ground of unconstitutionality assigned, namely, that, by implication arising from article 122 of' the Constitution, the Legislature is forbidden from exempting litigants from liability for costs in civil suits, or in other than criminal matters, is clearly untenable, in view of the express injunction contained in article 201 that the Legislature shall make the very provision contained in *488 this section 13, exempting the suits there in question from liability for costs.
[3] The other ground of unconstitutionalitj’-, namely, that the object of the act is not expressed in its title, is one so constantly invoked both in this state and elsewhere that one cannot but wonder that more attention is not paid to the titles of statutes by those who undertake to draft them.
In the case of this Act 98, for instance, where the object was to provide for the registration of voters, a manifestly sufficient and irreproachable title would have been the first clause of the title of the act, namely, “An act relative to a new registration of voters throughout the state”; or, shorter still, an act relative to the registration of voters. Every matter germane to the registration of voters would have been manifestly covered by such a title. But the said general clause in the title of the act is followed by specifications which are apparently intended to be a complete synopsis of the contents of the act; so that the title as a whole, if standing by itself, might lead any one hearing it read, or reading it, to believe that the general subject of registration of voters was to be dealt with in the body of the act only in the respects thus specially mentioned.
[4] In these specifications, or synopsis, no mention is made of an intention to legislate on the subject of exempting litigants from the payment of costs, or of modifying the rule by which the filing of all civil suits must be aecomiianied by a deposit, or bond, for costs. Were it not, therefore, that this statute was being enacted simply in compliance with provisions of the Constitution imposing upon the Legislature the imperative duty to enact it, and that, in particular, the subject-matter of this section 13 was specially covered by article 201 of the Constitution, the sufficiency of said title as to said section 13 might well be doubted. The rule, however, is that a statutory provision will not be held unconstitutional for the reason of not being expressed in the title of the statute containing it unless the insufficiency of the title is clear and unmistakable. Am. & Eng. Ann. Cases, vol. 1, p. 584, where the cases are collated. We are not prepared to hold this of the title here in question.
Judgment affirmed.