MARTINEAU, Justice of the Peace, v. CRABBE et al., Board of County Commissioners.

No. 2791. Decided June 29, 1915. (150 Pac., 301).

1. PROHIBITION—NATURE OF REMEDY—STATUTE. Where a justice of the peace sought prohibition to restrain the board of county commissioners from taking further action under Laws 1915, c. 108, amending Comp. Laws 1907, Sec. 544, relating to the constitution of justice courts in cities of the first class and others, and regardless of an emergency clause which the applicant contended was unconstitutional, the act would go into effect May 11, 1915, and the case was presented to the court on oral argument on May 14th, although the board had appointed a second justice under the act before it went into effect, prohibition could not issue, since under Comp. Laws 1907, Sec. 3654, the office of the writ is to arrest the proceedings of any tribunal, corporation, board, or person when such proceedings are without or in excess of the jurisdiction of the tribunal; the writ of "prohibition" being one commanding the person to whom it is directed not to do something which, by the suggestion of the relator, the court if informed he is about to do, a preventative rather than a corrective remedy, issuing only to prevent the commission of a future act. (Page 333.)

2. STATUTES—PARTIAL INVALIDITY. That Laws, 1915, c. 108, amending Comp. Laws 1907, Sec. 544, providing for the constitution of

justice courts in precincts coextensive with cities of the first class, and the appointment of a clerk and deputy clerks of the justice courts of such precincts, was in part repugnant to Const. Art. 8, Sec. 21, providing that judges of the Supreme Court, District Courts and justices of the peace shall be conservators of the peace, and may hold preliminary examinations in cases of felony, because of the provision that all causes of criminal action, arising within cities of the first class, and over which justices of the peace have jurisdiction, shall be brought before the respective justices for such cities, did not invalidate the entire act, since the power and jurisdiction of the justice in criminal cases within his precinct had nothing to do with the power of the board of county commissioners to appoint him, while an invalid section of a statute, which may be eliminated without affecting the other provisions, will not invalidate the entire act. (Page 335.)

3. STATUTES—JUSTICE COURTS—CONSTITUTIONALITY—"SUBJECT OF A LAW." Laws 1915, c. 108, amending Comp. Laws 1907, Sec. 544, providing for the election of justices of the peace and constables in cities of the first class and others, and the appointment of a clerk and deputy clerks for justice courts by the board of county commissioners, is not violative of Const. Art. 6, Sec. 23, providing that, with certain exceptions, no bill shall be passed containing more than one subject, since all the provisions of the act relate to the constitution of two justice courts in certain precincts made coextensive with cities of the first class, and one justice in precincts coextensive with other cities, all the provisions of the act relating to its general purpose having a natural connection with the subject, while the fact that it provides for the election of constables and the appointment of a clerk and deputy clerks of the justice courts does not make it repugnant to the Constitution, since the provisions are germane to the subject of the act providing for the establishment of justice of the peace courts; the "subject of a law" being the matter to which it relates and with which it deals.[1] (Page 336.)

4. STATUTES—SPECIAL LAWS—SALARIES OF JUSTICES OF PEACE— "COUNTY OFFICER." Laws 1915, c. 108, amending Comp. Laws 1907, Sec. 544, providing for the constitution of justice courts in precincts coextensive with cities of the first class, one justice court in precincts coextensive with cities of 15,000 to 40,000 population, etc., and providing for the payment of a salary to the justices instead of compensation by fees as previously, is not violative of Const. Art. 6, Sec. 26, prohibiting any private or spe-

[1]*Edler* v. *Edwards*, 34 Utah, 13, 95 Pac. 367; *Salt Lake City* v. *Wilson*, 46 Utah, 60, 148 Pac. 1104; *Marioneaux* v. *Cutler*, 32 Utah, 475, 91 Pac. 355.

cial laws regulating the jurisdiction and duties of justices of the peace, the practice of courts of justice, or county and township affairs, or creating, increasing or decreasing the compensation of public officers during their respective terms, and providing that, where a general law can be applicable, no special law shall be enacted, but that the section shall not restrict the power of the Legislature to establish and regulate the compensation and fees of county and township officers, since justices of the peace are "county officers," and are not within the provision prohibiting the Legislature from increasing or decreasing fees of a public officer.   (Page 338.)

5.  JUSTICES OF THE PEACE—STATUTE FIXING SALARIES—CONSTITU-
TIONALITY.   Laws 1915, c. 108, amending Comp. Laws 1907, Sec. 544, providing for the constitution of justice courts in precincts coextensive with cities of the first class, and one such court in precincts coextensive with cities of 15,000 to 40,000 population, is not violative of Const. Art. 21, Secs. 1, 2, providing that all officers, except notaries public, justices of the peace, and constables, shall be paid fixed salaries, provided that city justices may be paid by salary when so determined by the city authorities, and that the Legislature shall provide by law the fees which shall be collected by all officers within the state, and that notaries public, justices of the peace, and constables, paid by fees, shall accept them as their full compensation, but that all other officers shall keep a true account of all fees collected, and pay them into the proper treasury, since, when construed with Const. Art. 6, Sec. 26, providing that nothing in that section shall be construed to deny or restrict the power of the Legislature to establish and regulate the compensation and fees of county and township officers, article 21 does not prohibit the Legislature from establishing and regulating the compensation of a justice of the peace.   (Page 339.)

6.  STATUTES—SPECIAL LAWS—JUSTICES OF THE PEACE.  Laws 1915, c. 108, amending Comp. Laws 1907, Sec. 544, and providing for the constitution of justice courts in cities of the first class and that such justices shall be attorneys at law, is not totally invalid because violative of Const. Art. 6, Sec. 26, providing that, in all cases where a general law can be applicable, no special law shall be enacted, as fixing a different standard of qualifications for first-class cities than for justices in other precincts.   (Page 340.)

7.  STATUTES—SPECIAL LAWS—"DUTY"—JUSTICES OF THE PEACE. Laws 1915, c. 108, amending Comp. Laws 1907, Sec. 544, providing for the constitution of justice courts in precincts coextensive with cities of the first class, and others, and providing that the board of county commissioners shall appoint a clerk and deputy clerks for those precincts, is not violative of Const. Art. 6,

Sec. 26, subd. 4, prohibiting the Legislature from enacting any special laws regulating the jurisdiction and duties of a justice of the peace, since the term "duties," as used, comprehends only judicial acts, and such ministerial acts as justices must perform in their official capacity, and do not include the routine details of merely clerical character which clerks perform. (Page 340.)

Application for writ of prohibition by L. R. Martineau, Jr., Justice of the Peace, against A. H. Crabbe and others, Board of County Commissioners of Salt Lake County.

WRIT DENIED.

*Ray Van Cott* for plaintiff. .

*Harold Fabian* and *Herbert Van Dam, Jr.,* Assistant County Attorney, for defendant.

## STATEMENT OF FACTS.

This is an application by plaintiff, L. R. Martineau, Jr., for a writ of prohibition against defendants, the county commissioners of Salt Lake County. The action involves the validity of chapter 108, Session Laws Utah 1915, which is as follows:

"An act amending section 544, chapter 5 of the Compiled Laws of Utah, 1907, relating to justices of the peace and constables in cities of the first class, and providing that causes of action arising within the limits of such cities be commenced and tried before such justices, fixing the qualifications and salaries of such justices, providing for a clerk and deputy or deputies and for the disposition of the fees of such justices' courts.

"Be it enacted by the Legislature of the state of Utah:

"Section 1. That section 544, chapter 5 of the Compiled Laws of Utah, 1907, be, and the same is hereby amended to read as follows:

"The officers of a precinct are one justice of the peace and one constable, except as otherwise herein provided. The board of county commissioners, as public convenience may

require, shall divide their respective counties into precincts for the purpose of electing justices of the peace and constables: Provided, that cities of the first class of 40,000 or more inhabitants, shall not be divided into precincts for the purpose of electing precinct officers, but such cities shall be deemed one precinct for the purpose of electing two justices of the peace and two constables therefor, and that cities having a population of more than 15,000 and less than 40,000 inhabitants shall be deemed one precinct for the purpose of electing one constable therefor and for the purpose of providing a justice of the peace, therefor, but no justice of the peace shall be elected therein, and the municipal judge of such cities shall be ex officio precinct justices therefor: Provided further, that no person shall act as justice of the peace in cities of the first class unless such person has first been regularly admitted by the Supreme Court of Utah to practice as an attorney at law in the courts of this state.

"That within thirty days after the passage of this act, it shall be the duty of the county commissioners of the county within which cities of the first class of 40,000 or more inhabitants are located to appoint one justice of the peace and one constable to serve in such cities until the next ensuing general election, and until their successors are duly elected and qualified.

"That all causes of criminal action, arising within the limits of cities of the first class of 40,000 or more inhabitants and over which justices of the peace have jurisdiction, shall be brought before the respective justices of the peace in and for such cities of the first class where the causes of action arise: Provided, however, that nothing in this section shall be construed to restrict or in any way affect the jurisdiction of any city or municipal court as at present constituted.

"The annual salaries of justices of the peace in cities of the first class of forty thousand or more inhabitants shall be twenty-four hundred dollars each, payable monthly out of the county treasury of the county in which such cities are located.

"All acts and parts of acts in conflict herewith are hereby repealed.

"The county commissioners of the respective counties within which cities of the first class of forty thousand or more inhabitants are located, shall appoint a clerk of the court of the justice of the peace and such deputy clerks as they may deem necessary, and shall fix the compensation of such officers.

"It shall be the duty of the clerk of said court 'to act as custodian of all the files, papers, indexes and dockets of justices of the peace within said cities of the first class, and the said clerk shall be responsible for the care and safe keeping of all such records and shall collect all fees as provided by law for justices of the peace and shall turn the same into the country treasury monthly.

"This act shall take effect upon approval.

"Approved March 22d, 1915."

It is admitted that plaintiff was on November 3, 1914, duly elected to the office of justice of the peace for Salt Lake City precinct, and that on January 4, 1915, he duly qualified and entered upon the administration of the duties of the office and ever since has administered, and still continues to administer, the same. It is also admitted that defendants, as county commissioners, in pursuance of the provisions of the foregoing enactment, at a meeting held on April 14, 1915, appointed Brigham Clegg to the office of justice of the peace for Salt Lake precinct and one Clifford Naylor to the office of "clerk of the court of justice of the peace" for said precinct, said appointees to hold and to continue in said office until the next general election and until their successors are duly elected and qualified. Plaintiff, however, alleges that on March 8, 1915, the date of the final passage of chapter 108, known as "Senate Bill No. 200," the "emergency clause" was stricken out, and that the enactment thereby did not take effect immediately upon approval, and that the same could not take effect until May 11, 1915, sixty days after the adjournment of the session of the Legislature at which the enactment was passed. It is further alleged that the defendants, as county commissioners, "will on or after the 11th day of May, 1915, upon discovery of the fact as to when

said pretended enactment takes effect, proceed to appoint some persons to the respective offices hereinbefore set forth, * * *and will require the clerk of said court to collect all fees as provided by law for affiant (plaintiff) and * * * to turn the same into the country treasury monthly * * * and will seek to compel affiant to accept the salary prescribed in said enactment as full compensation for the performance of his duties as such justice of the peace unless prohibited,'' etc., from so doing.

McCARTY, J. (after stating the facts as above).

The first question presented relates to the ''emergency clause'' of the act in question, which provides that ''this act shall take effect upon approval.'' It is contended 1 that the Senate Journal shows that this clause was stricken from the act just before its final passage, and that therefore, under section 25, art. 6, of the Constitution, the enactment did not take effect until May 11, 1915, 60 days after the adjournment of the Legislature. This section of the Constitution provides that:

''All acts shall be officially published, and no act shall take effect until so published, nor until sixty days after the adjournment of the session at which it passed, unless the Legislature by a vote of two-thirds of * * * each house shall otherwise direct.''

It is contended on behalf of defendants that the act containing the emergency clause, having been engrossed, approved, signed, enrolled, and deposited with the secretary of state, implies absolute verity and should be accepted as the very bill adopted by the Legislature, and that the journal of the Legislature cannot be looked to for the purpose of attacking the manner of its enactment. While a question is thus presented that is not free from doubt, it is nevertheless, so far as the issues here involved are concerned, academic only. One of the essential allegations of the petitition by which the action of this court is invoked in this proceeding is:

''That defendants will on and after the 11th day of May,

1915, upon discovery of the fact when said pretended act takes effect, proceed to appoint some persons to the respective offices," mentioned in the act.

The prayer of the petition is in part as follows:

That the defendants "be absolutely and forever restrained and prohibited from taking any further proceedings in said * * * matter, or doing any of the acts or things hereinbefore complained of," etc.

It will thus be observed that the action of this court is invoked to prohibit defendants from doing certain things set forth in the petition, and not for the purpose of reviewing and correcting some alleged error based on a past transaction. The office and function of the writ of prohibition is to—

"arrest the proceedings of any tribunal, corporation, board or person * * * when such proceedings are without or in excess of the jurisdiction of such tribunal," etc. Comp. Laws 1907, section 3654.

"The writ, * *' * as its name imparts, is one which commands the person to whom it is directed not to do something by which, by the suggestion of the relator the court is informed he is about to do. If the thing he already done, it is manifest the writ of prohibition cannot undo it, for that would require an affirmative act." Spelling, Ext. Relief, Sec. 1720.

In High's Ext. Legal Rems, section 766, the author says:

"Another distinguishing feature of the writ is that it is a preventative rather than a corrective remedy and issues only to prevent the commission of a future act and not to undo an act already performed."

See, also, 32 Cyc. 603.

Therefore the allegation in the petition that defendants, on the 14th day of April, A. D. 1915, in pursuance of the act in question, "did appoint one Brigham Clegg to the alleged office of justice of the peace * * * and one M. W. Earl to the alleged office of constable," etc., can be considered as matters of inducement only. It appears that the act in question, regardless of the emergency clause, went into effect May 11, 1915. The case was presented to this

court on oral argument May 14, 1915.  It will therefore be observed that, if the enactment in other respects is valid, the defendants are authorized and empowered under the act to do the things which plaintiff by this writ seeks to prohibit them from doing.  As stated, the question of whether defendants were authorized in making the appointments mentioned prior to May 11, 1915, is, so far as this case is concerned, academic only, and we refrain from expressing an opinion thereon.

It is also contended that section 544x1 of the act providing that "all causes of criminal action, arising within the limits of cities of the first class of 40,000 or more inhabitants and over which justices of the peace have jurisdiction, shall be brought before the respective justices of the peace in and for such cities," is in conflict with section 21, art. 8, of the Constitution, which provides that "Judges of the Supreme Court, district courts, and justices of the peace, shall be conservators of the peace, and may hold preliminary examinations in cases of felony."  While section 544x1 is apparently in conflict with and repugnant to this provision of the Constitution (and in the opinion of the writer clearly so), yet we fail to see how or wherein the question is necessarily involved.  It relates to the power and jurisdiction of the justice (whether his jurisdiction in criminal cases arising within the precinct for which he is appointed is exclusive or concurrent), but had nothing to do with the power of the commissioners to appoint a justice and in no manner relates to that question.  The power and authority of the commissioners to appoint a justice of the peace is one thing.  The power and jurisdiction which the justice may lawfully exercise is wholly a different thing.  Assuming, however, for the sake of argument, that this section of the statute is invalid, it does not render nugatory the entire act.  The section is separable and distinct from the balance of the act, and can be eliminated therefrom without in any way affecting the other provision.

Another objection urged against the validity of the act in question is that it violates section 23 of article 6 of the

Constitution of this state, which, so far as material
here, provides:

"Except general appropriation bills, and bills for the codi-
fication and general revision of laws, no bill shall be passed
containing more than one subject.  *  *  *"

We think the objection is unsound. Manifestly the pur-
pose of this provision of the Constitution is to prevent the
Legislature from intermingling in one act two or more sepa-
rate and distinct propositions—things which, in a legal sense,
have no connection with, or proper relation to, each other.
The reasons for, and the scope of, constitutional provisions
of this character, are well illustrated in 26 A. & E. Ency. L.
(2d Ed.) 575, in the following language:

"This requirement of singleness is not intended to embarrass hon-
est legislation, but only to prevent the vicious practice of joining in
one act incongruous and unrelated matters; and if all the parts of a
statute have a natural connection and reasonably relate, directly or
indirectly to one general and legitimate subject of legislation, the act
is not open to the objection of plurality, no matter how extensively or
minutely it deals with the details looking to the accomplishment of
the main legislative purpose."

It will be noticed from a casual reading of the act that
its purpose (general object) is to provide two justice
of the peace courts in certain precincts that are made co-
extensive with cities having a population of 40,000 or more
inhabitants and one justice of the peace court in precincts
that are coextensive with cities having more than 15,000 and
less than 40,000 inhabitants. All of the provisions of the
act relate and are germane to its general purpose. They
have a natural connection with the subject, namely, providing
for and establishing justice of the peace courts in the classes
of precincts therein mentioned. The fact that the act pro-
vides for the election of two constables in precincts coexten-
sive with cities of the first class of 40,000 or more inhabitants
and the appointment of a clerk and deputy clerks of "the
court of the justice of the peace" of such precincts does not
make it repugnant to the provision of the Constitution above
set forth. These provisions are parts of, and are germane
to, the subject of the act, namely, providing and establishing

justice of the peace courts for this class of precincts. In the case of *Herbert* v. *Baltimore County Comr's*, 97 Md. 639, 55 Atl. 376, the court, construing an almost identical constitutional provision, said:

"The law relating to and regulating the duties of justices and constables had been always considered as one subject, and has been so treated in the Constitution of the state and the local law itself."

The Supreme Court of Alabama, in applying a similar constitutional provision to a statute as broad, if not broader than our own, said, referring to the statute:

"Every provision of the act is so plainly germane and cognate to the general subject of establishing the court and defining its powers and jurisdiction that we will make no further comment. *Hawkins* v. *Roberts*, 122 Ala. 130, 144, 27 South. 327, and authorities there cited. We feel no hesitation in holding the act to be constitutional." *State* v. *Abernathy*, 40 South. 353.

The Constitution of South Dakota contains the following provision:

''No law shall embrace more than one subject which shall be expressed in its title.''

The Supreme Court of that state, in a well considered opinion (*State* v. *Morgan*, 2 S. D. 32, 48 N. W. 314), says:

"Whatever may be the scope of (an) act, it can embrace but one subject, and all its provisions must relate to that subject. They must be parts of it, incident to it, or in some reasonable sense auxiliary to the object in view. This constitutional requirement is addressed to the subject, not to the details, of the act. That subject must be expressed in the title. The subject must be single. The provisions to accomplish the object involved in that subject may be multifarious. * * * The Constitution authorizes one subject, and any number of matters, provided they have any natural or logical connection with each other in legislation."

And again:

"There is no constitutional restriction as to the scope or magnitude of the single subject of a legislative act."

In the case of *Marioneaux* v. *Cutler*, 32 Utah 475, 91 Pac. 355, it was contended that salary and mileage of a judge were different subjects, and hence could not be joined in the same act. This court, speaking through Mr. Justice Frick, said:

Vol. 46—22

"We need not discuss at length the reasons why salary or compensation and mileage may be one subject within the purview of the Constitution. That, as abstract propositions, they may be two subjects, cannot well be questioned. It is equally apparent that for legislative purposes, in fixing the compensation of officers, they may quite as naturally form but one subject."

*Edler* v. *Edward*, 34 Utah 13, 95 Pac. 367; *Salt Lake City* v. *Wilson*, 46 Utah 60, 148 Pac. 1104; *Messenger* v. *Teagan*, 106 Mich. 654, 64 N. W. 499; *Clark* v. *Black*, 136 Ga. 812, 72 S. E. 251; *Conner* v. *Mayor, etc., of New York*, 5 N. Y. 297; 7 Words and Phrases, 6708-6710, and volume 4, New Series, 731; *State* v. *Fontenot*, 132 La. 481, 61 South 534, Ann. Cas. 1915A, 76.

We also invite attention to an elaborate note to the last cited case, commencing on page 79, Ann. Cas., in which decisions are cited bearing on practically every question raised in the case at bar.

The validity of the act is also challenged on the ground that it is in contravention of the following provisions of section 26 of article 6 of the Constitution, namely:     **4**

"The Legislature is prohibited from enacting any private or special laws in the following cases:  *  *  *  (4) Regulating the jurisdiction and duties of justices of the peace.  *  *  *  (6) Regulating the practice of courts of justice.  *  *  *  (11) Regulating county and township affairs.  *  *  *  (18) Creating, increasing or decreasing fees, percentages or allowances of public officers during the term for which said officers are elected or appointed.  *  *  *  In all cases where a general law can be applicable, no special law shall be enacted."

The concluding paragraph of this section provides that:

"Nothing in this section shall be construed to deny or restrict the power of the Legislature to establish and regulate the compensation and fees of county and township officers."

We are clearly of the opinion that justices of the peace are, in the meaning of the law, county officers (18 A. & E. Ency. L. [2d Ed.] 10; *Ballantyne* v. *Bower*, 17 Wyo. 356, 99 Pac.

869, 17 Ann. Cas. 82; 2 Words and Phrases, 1663, volume 1, New Series, 1101), and hence do not fall within the provision of section 26, *supra,* prohibiting the Legislature from ''creating, increasing or decreasing fees, percentages or allowances of public officers,'' etc.

It is contended that the act violates the provisions of article 21 of the Constitution.

Section 1 is as follows:

''All state, district, city, county, town and school officers, excepting notaries public, boards of arbitration, court commissioners, justices of the peace and constables, shall be paid fixed and definite salaries: Provided, that city justices may be paid by salary when so determined by the mayor and council of such cities.''

Section 2, so far as material here, provides that:

''The Legislature shall provide by law the fees which shall be collected by all officers within the state. Notaries public, boards of arbitration, court commissioners, justices of the peace, and constables paid by fees, shall accept said fees as their full compensation. But all other state, district, county, city, town and school officers, shall be required by law to keep a true and correct account of all fees collected by them, and to pay the same into the proper treasury.''

These provisions should be read and construed in connection with the provisions of section 26, art. 6, herein set forth, and particularly with the concluding paragraph thereof, which provides that nothing in that section ''shall be construed to deny or restrict the power of the Legislature to establish and regulate the compensation and fees of county and township officers.'' We do not think the provisions, when so read and construed, prohibit the Legislature from establishing and regulating the ''compensation and fees'' of justices of the peace and other county officers. The act, therefore, cannot be successfully assailed on the ground last mentioned.

Another objection urged against the validity of the act is that it provides that persons who have not been admitted by this court to practice as attorneys at law in the courts

of this state are not eligible to hold the office of justice of the peace in cities of the first class. It is contended that the act in this regard is special legislation and violates the provision of the Constitution, which provides that:

"In all cases where a general law can be applied no special law shall be enacted."

There is much force to plaintiff's contention that, in prescribing the qualifications of justices of the peace, a general law on the subject would be applicable, and that an act fixing a different standard of qualifications for justices of the peace in precincts coextensive with cities of the first class from that required of justices of the peace in other precincts is in derogation of this provision of the Constitution. Conceding, without deciding, that the act in that regard is void, it does not necessarily follow that the entire act must be so declared. The board of county commissioners may nevertheless appoint some person to the office who, in its judgment, is suitable for the position, and, if perchance it should appoint some person who has not been regularly admitted by this court to practice in the courts of this state, the right of such person to hold the office might, in a proper proceeding, be challenged. It must be conceded that, if the law were silent respecting the qualifications a person must possess in order to be eligible to hold the office, the board of county commissioners might very properly appoint a person who has been regularly admitted to practice before the courts of this state. We therefore deem is unnecessary on this occasion to decide or further consider the question.

It is also contended that the appointment of a clerk and deputy clerks, as provided in section 544x4 of the act, regulates the duties of justices of the peace in precincts coextensive with cities of the first class containing 40,000 or more inhabitants, and relieves such justices from performing certain duties required of justices of the peace in all other precincts throughout the state; and that this discrimination violates the provisions of the Constitution (subdivision 4, section 26, art. 6), prohibiting the Legislature from enacting any "special laws * * * regulating

the jurisdiction and duties of justice of the peace.'' The term ''duties,'' as here used in the Constitution, we think, comprehends only the judicial acts and such ministerial acts as justices of the peace are required to perform in their official capacity, and do not include such acts and services as are merely clerical in character and as are usually performed by a clerk or an amanuensis; and hence the act cannot be successfully assailed on the ground that it is in conflict with the provisions of the Constitution last referred to.

The writ is denied. Costs to defendants.

STRAUP, C. J., and McCARTY, J., concur.