## STATE OF CONNECTICUT *v.* ALPHONSO VEGA
## (14797)

O'Connell, Lavery and Spear, Js.

Argued December 4, 1996—officially released March 18, 1997

*Michael L. Moscowitz*, special public defender, for the appellant (defendant).

*Mary H. Lesser*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio Vitale*, assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a)[1] and 53a-59 (a) (1),[2] and possession of a weapon or dangerous instrument in a correctional institution in violation of General Statutes § 53a-174a (a).[3] The jury could not reach a unanimous verdict on the charge of attempted assault in violation of General Statutes §§ 53a-8 and 53a-49 (a) (2),[4] and the

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 53a-174a (a) provides: "A person is guilty of possession of a weapon or dangerous instrument in a correctional institution when, being an inmate of such institution, he knowingly makes, conveys from place to place or has in his possession or under his control any firearm, weapon, dangerous instrument, explosive, or any other substance or thing designed to kill, injure or disable."

[4] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes § 53a-49 (a) provides in pertinent part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

trial court declared a mistrial on that charge. On appeal, the defendant asserts that the trial court improperly (1) refused to give a missing witness instruction, (2) admitted hearsay testimony, and (3) permitted correctional officers to testify as expert witnesses. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. James Diaz, the victim, was incarcerated from January to March, 1991, at the Community Correctional Center in Bridgeport for a robbery that was committed in Norwalk. When the victim was arrested for the robbery, he gave the Norwalk police a statement implicating two other men, Ramito Tosado and Angel Lopez, in the crime. While at the Bridgeport jail, the victim was threatened by Tosado, who was a fellow inmate, and by Tosado's friend Carlos Feliciano, who was also an inmate. While at the Bridgeport jail, the victim learned that Tosado was a member of a gang. Tosado informed the victim that the gang had put out a contract on the victim's life.

The victim informed the correction officials about the contract and was promptly transferred to a correctional facility at Enfield, and then to the Cheshire Correctional Center (Cheshire). The day after the victim's arrival at Cheshire, he was eating supper in the cafeteria with a friend, Orlando Jiminez. Carlos Feliciano, who had also been transferred to Cheshire, came into the cafeteria and stared at the victim. Feliciano began gesturing to others in the cafeteria in a "yes" fashion. Without finishing their meals, the victim and Jiminez exited the cafeteria. The victim and Jiminez later returned to the cafeteria to obtain a towel. While in a hallway, the victim was grabbed from behind and cut with a razor on the right side of his neck. Jiminez, who was a few steps ahead of the defendant, looked back and saw the defendant running and making a hand movement across

the victim's neck. Jiminez could also see that the defendant had a blade in his hand.

While on furlough, the victim received a telephone call from his brother, Mark Diaz, who was incarcerated at the Correctional Institution at Somers. During this telephone call, the defendant, who was also at the prison, spoke with the victim. The defendant told the victim that he had to cut him because gang members had threatened to harm the defendant if he did not attack the victim.

I

The defendant's first claim is that the trial court improperly denied the defendant's request for a *Secondino* instruction. The defendant claims that he was entitled to the missing witness instruction because the state failed to call the victim's brother, Mark Diaz, as a witness to corroborate the testimony about the telephone conversation between the victim and the defendant. "The failure to produce a witness for trial who is available and whom a party would naturally be expected to call warrants an adverse inference instruction against that party who could be expected to call that witness. *Secondino* v. *New Haven Gas Co.*, [147 Conn. 672, 674–75, 165 A.2d 598 (1960)]. *State* v. *Santagelo*, [205 Conn. 578, 596, 534 A.2d 1175 (1987)]; see also *State* v. *Amarillo*, 198 Conn. 285, 307, 503 A.2d 146 (1986). An inquiry into the appropriateness of a *Secondino* instruction is, accordingly, two-pronged: whether the witness is available and whether, under the facts of this case, the witness is one whom the state would naturally be expected to produce. . . . *State* v. *Wood*, 208 Conn. 125, 140, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). This court has consistently held that [w]hether an absent witness has superior or peculiar information and whether an adverse inference can be drawn is a question of fact for the trier. *Perl* v. *Case*,

3 Conn. App. 111, 115, 485 A.2d 1331 [cert. denied, 195 Conn. 803, 491 A.2d 1103 (1985)]. This court cannot reverse or modify the trial court's determinations of fact unless they are clearly erroneous. *Buddenhagen* v. *Luque*, 10 Conn. App. 41, 44, 521 A.2d 221 (1987). *State* v. *Williams*, 20 Conn. App. 263, 266, 565 A.2d 1365 (1989)." (Internal quotation marks omitted.) *State* v. *Jurgensen*, 42 Conn. App. 751, 758, 681 A.2d 981, cert. denied, 239 Conn. 931, 683 A.2d 398 (1996).

The defendant did not carry the burden of putting forth sufficient evidence demonstrating that Mark Diaz was available to testify during trial. The victim testified that he would not tell the state's attorney his brother's location because he was concerned for his brother's safety because of the gang. In addition, even if Mark Diaz' location were known to the state, he would most likely have resisted coming to court because he had received threatening telephone calls about the trial.

When a statute does not define a phrase, we look elsewhere for the peculiar and appropriate meaning of the phrase. We may look to the meaning given the phrase in unrelated statutes and consider that where the legislature uses the same phrase it intends the same meaning. See *Link* v. *Shelton*, 186 Conn. 623, 627, 443 A.2d 902 (1982). Therefore, we will also look to Practice Book § 956C, which sets forth excluded time periods with regard to a speedy trial and addresses unavailability. Practice Book § 956C provides that: "a defendant or any essential witness shall be considered unavailable whenever such person's whereabouts are known but his or her presence for trial cannot be obtained by due diligence or he or she resists appearing at or being returned for trial." Moreover, "[b]efore a negative inference can be drawn from a party's failure to produce a witness, it must be shown that the party was able to procure the witness' *physical presence in court.*" *State* v. *Wood*, supra, 208 Conn. 140.

Because the defendant failed to demonstrate Mark Diaz' availability, we do not have to determine whether he was in fact a witness whom the state would naturally have been expected to produce. The trial court's finding of unavailability was not clearly erroneous, and its decision not to deliver the *Secondino* instruction was, therefore, not in abuse of its discretion.

## II

The defendant's second claim is that the trial court improperly admitted hearsay testimony. The defendant argues that the trial court should not have allowed the victim to testify that Tosado had asked him why he had given a statement to the police implicating Tosado. The victim also testified that Tosado had threatened him.

The defendant claims that the trial court improperly admitted these statements under the state of mind exception to the hearsay rule. The state, however, contends that it did not offer these statements to show the state of mind of the declarant, but to show the effect of the statements on James Diaz, the victim to whom the statements were made.

"It is an elementary premise of evidentiary law that a statement made out-of-court that is offered to establish the truth of the facts contained in the statement is hearsay. . . . A statement that is offered to show its effect upon the hearer, however, is not hearsay. . . . As an evidentiary claim, the defendant has the burden of showing that the trial court abused its discretion and must also demonstrate the harmful effect of the court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooke*, 42 Conn. App. 790, 799, 682 A.2d 513 (1996).

The testimony was not offered to establish its truth—whether something was going to happen to the victim—but, rather, to show its effect on the victim in

deciding to speak to correction officers about being transferred. Statements that are not used to prove the truth of the matter asserted are not hearsay. *State* v. *Cruz*, 212 Conn. 351, 356, 562 A.2d 1071 (1989). We conclude that the testimony was not hearsay and was properly admitted by the trial court. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.3.3.

### III

The defendant's third claim is that the trial court improperly allowed Correction Officer Curtis Wood and Deputy Warden Remi Acosta to testify as experts concerning the conduct of prison inmates. At trial, Wood and Acosta testified that they had substantial experience as correctional officers. Wood and Acosta also testified that they possessed a great deal of knowledge concerning prison gangs and weapons made in correctional facilities. The defendant claims that the trial court improperly usurped the jury's function by permitting the two correction officers to render their opinions and to answer hypothetical questions as experts in the area of gangs and weaponry in correctional facilities.

"The determination of the qualification of an expert is largely a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 783, 621 A.2d 267 (1993). Furthermore, the question of a witness' competency to testify on technical matters is an issue to be determined by the trier through an assessment of the nature of the technicality involved and the proposed witness' level of expertise concerning these matters. See *Varley* v. *Varley*, 189 Conn. 490, 501, 457 A.2d 1065 (1983). Moreover, hypothetical questions are the most common form of expert opinion and are routinely permitted. See *State* v. *Vilalastra*, 207 Conn. 35, 44–45, 540 A.2d 42 (1988).

In the present case, the trial court did not abuse its discretion when it permitted the two correction officers

to render opinion testimony on subjects with which they had a great deal of experience. It is common to qualify law enforcement officers as experts in the conduct of criminals because of their experience and the lack of such knowledge among lay jurors. See *State* v. *Anderson*, 20 Conn. App. 271, 275, 566 A.2d 436 (1989), cert. denied, 213 Conn. 813, 568 A.2d 796 (1990) (based on her experience, police officer qualified to testify to comparative reliability of crime victim's identification of defendant). Furthermore, the defendant cannot prevail on this claim because he did not prove harm by showing that the testimony probably affected the verdict. *State* v. *Campbell*, 225 Conn. 650, 657–58, 66 A.2d 287 (1993).

The judgment is affirmed.

In this opinion the other judges concurred.