[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
The commissioner of the Department of Children and Families (DCF) filed CT Page 5450 an application for an order of temporary custody. During the hearing on the application, DCF adduced evidence that the child, Terrence S., had been burned on his leg by a cigarette while in the custody of his mother. DCF contended that the cigarette burn was a "serious physical injury" within the ambit of General Statutes § 46b-129 (b), authorizing the court to grant an order of temporary custody.[1] After an evidentiary hearing, the court denied the application from the bench. Both during argument by counsel and in the course of delivering its oral decision denying the application, the court adverted to the definition of the term serious physical injury in § 46b-129 (b) as being informed by the statutory definition of that phrase in the Penal Code, General Statutes § 53a-3 (4)[2] The court now reconsiders that aspect of its opinion.
Whether the statutory definition of serious physical injury in §53a-3 (4) applies to § 46b-129 "is a matter of statutory interpretation, which is a matter of law. . . . In interpreting statutes, our analysis is guided by well established principles of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) In re Eden F., 250 Conn. 674, 690, 741 A.2d 873 (1999).
"To discern the intent of the legislature, we look first to the words of the statute." In re Sheldon G., 216 Conn. 563, 568, 583 A.2d 112
(1990). Section 46b-129 (b) provides that the court may issue an order of temporary custody if "there is reasonable cause to believe that (1) the child is suffering from serious physical illness or serious physical injury or is in immediate physical danger from his surroundings and (2) that as a result of said conditions, the child's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's safety. . . ." (Emphasis added.)
Neither § 46b-129, nor any other statute to which § 46b-129
refers, or which refers to § 46b-129, defines the term "serious physical injury." Specifically, the statute does not incorporate by express reference the definition of serious physical injury in General Statutes § 53a-3 (4), as some statutes do. See General Statutes §§ 14-223, 14-224, 29-136; see also General Statutes §§ 10-233d,14-224 (b), 29-36 (a), 29-37a (a), 29-37d, 29-37j (a) 29-38, 52-571f,52-571g, 53-202k, 53-206, 53-206b (3), 53-206c (2), 53-247 (d), expressly incorporating by reference other penal code definitions. CT Page 5451
"We next look to the statute's legislative history." Burke v. FleetNational Bank, 252 Conn. 1, 16, 742 A.2d 293 (1999). The provision for the granting of an order of temporary custody where a child is suffering from "serious physical injury" originally derives from Public Acts 1965, No. 580 which required physicians and hospitals to report cases involving a child who had "serious physical injury or injuries inflicted upon him other than by accidental means." The act also conferred qualified immunity on any person making such a report. In 1966, this act was codified as General Statutes § 17-38a. Notably, not until 1969 was the Penal Code enacted. See Public Acts 1969, 828.
Section 17-38a was amended by Public Acts 1967, No. 317 and Public Acts 1969, No. 25 in ways not relevant to the issue here. The statute was amended again by Public Acts 1971, No. 216 to authorize the physician to hold a child suffering serious physical injury for up to seventy hours, after which the Welfare Commissioner was to take appropriate measures to protect the child. The 1971 act also removed the word "serious" before physical injury but added the reporting grounds that the child "has injuries which are at variance with the history given of them, or is in a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, deprivation of necessities or cruel punishment. . . ."
In 1973, the Legislature amended § 17-38a to expand the categories of persons deemed mandated reporters and to authorize a physician to hold an abused child for up to ninety-six hours. Public Acts 1973, No. 73-205. The categories of mandated reporters was again expanded in 1974. See Public Acts 1974, No. 74-293. In 1975, the Legislature amended § 17-38a to provide for the removal of a child without the consent of the child's parents upon terms substantially similar to those that now exist in § 46b-129 (b).[3]
In 1983, however, § 46b-129 (b) authorized the Superior Court to grant an order vesting custody of a child in the commissioner of the department of children and youth services if, upon the filing of a petition, it appeared "that there is reasonable cause to find that the child's or youth's condition or the circumstances surrounding his care require that his custody be immediately assumed to safeguard his care. . . ." In In re Juvenile Appeal (83-CD),189 Conn. 276, 455 A.2d 1313 (1983), the Supreme Court impressed the requirements for a ninety-six hour hold onto § 46b-129 (b), the statute authorizing the Superior Court to grant an order of temporary custody. In 1998, the legislature enacted Public Acts 1998, No. 98-241 which, in section 5, legislatively codified the holding in In re Juvenile Appeal (83-CD). CT Page 5452
Nothing in the legislative history of any of these Public Acts suggests that the General Assembly intended to incorporate the penal code definition of "serious physical injury" into what is now § 46b-129
(b). See 41 S. Proc., Pt. 9, 1998 Sess., pp. 2664-68, 2702-05; 41 H.R. Proc., Pt. 4, 1998 Sess., pp. 1057-58, 1410-11, 2565, 4145-67; Conn. Joint Standing Committee Hearings, Judiciary Pt. 6, 1998 Sess., pp. 1855-68, 1870-83, 1922-26, 1936-41, 1948-53, 2133-2219; 18 H.R. Proc., Pt. 7, 1975 May Special Sess., pp. 3347-52, 3417-19, see especially pp. 3350-51, remarks of Representative James T. Healey; 18 S. Proc., Pt. 4, 1975 Sess. p. 1623; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 9, 1975 Sess., pp. 441, 452-53, 458; 14 H.R. Proc., Pt. 5, 1971 Sess., pp. 2157-60; 14 S. Proc., Pt. 3, 1971 Sess., pp. 1355-56; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1971 Sess., pp. 582-84, 595-96, 597-98, 603-10; 13 S. Proc., Pt. 2, 1969 Sess. pp. 789-90; 13 H.R. Proc., Pt. 2, 1969 Sess, pp. 783-84; Conn. Joint Standing Committee Hearings, Public Health Safety, 1969 Sess., p. 176.
As for the legislative policy, § 46b-129 (b) was enacted to protect children who have been harmed or who may be harmed by their surroundings. See In re Michael D., 58 Conn. App. 119, 124, 752 A.2d 1135, cert. denied, 254 Conn. 911, 759 A.2d 505 (2000). The implementation of this policy is not advanced by importing the definition of serious physical harm in § 53a-3 (4) into § 46b-129 (b)
Finally, we turn to the relationship between § 46b-129 (b) and existing legislation. "Statutes are to be construed consistently with other relevant statutes, because we presume that the legislature intended to create a coherent body of law." In re Bruce R., 234 Conn. 194, 207,662 A.2d 107 (1995). That is, "[w]e are obligated . . . to read statutes together when they relate to the same subject matter." (Internal quotation marks omitted.) State v. State Employees' Review Board,239 Conn. 638, 653, 687 A.2d 134 (1997). A statute "relates to" the same subject matter of another statute where they have a connection with or reference to the same subject matter. Shaw v. Delta Air Lines, Inc.,463 U.S. 85, 96-97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (citing Black's Law Dictionary 1158 (5th ed. 1979) ("Relate. To stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with"). The subject matter of a statute is the matter with which it deals; Martineau v. Crabbe, 46 Utah 327, 150 P. 301, 304
(1915); broadly construed. Crews v. Cook, 220 Ga. 479, 139 S.E.2d 490,492 (1964)
The subject matter of title 53a is the definition and punishment of crimes. The subject matter of § 46b-129 is the protection of children. See In re Michael D., supra, 58 Conn. App. 124. Although the CT Page 5453 commission of a crime may give rise to circumstances warranting an order of temporary custody over a child; cf. State v. Miranda, 245 Conn. 209,715 A.2d 680 (1998); the two statutory schemes do not relate to each other or to the same subject matter. Notably, no statute within the penal code specifically designed for the punishment of child abuse or similar acts or omissions incorporates the definition of serious physical injury contained in § 53a-3. Moreover, the court has been unable to locate a single appellate case holding that statutes as conceptually different as the penal code and § 46b-129 are "relevant statutes" or "relate to the same subject matter." For these reasons, this court holds that §46b-129 does not relate to the same subject matter as the Penal Code.
It is true that "[a] fundamental purpose of the criminal law is to protect individual citizens from the criminal conduct of another." (Internal quotation marks omitted.) State v. Madera, 198 Conn. 92, 110,503 A.2d 136 (1985). But to find, on this basis, that the Penal Code definitions are "relevant statutes" or that they "relate to the subject matter" of a statute concerning the protection of neglected and uncared for children would swallow the rule that courts "are obligated . . . to read statutes together when they relate to the same subject matter." Virtually all statutes, after call, are enacted to protect people. See, e.g., Sligh v. Kirkwood, 237 U.S. 52, 59, 35 S.Ct. 501, 59 L.Ed. 835
(1915) ("The police power, in its broadest sense, includes all legislation and almost every function of civil government. Barbier v.Connolly, 113 U.S. 27."); Winstar Corp. v. United States, 64 F.3d 1531,1550 (Fed. Cir. 1995) (presumably all legislation is enacted for the public welfare); Cooper v. Eagle River Memorial Hospital, Inc.,270 F.3d 456, 460 (7th Cir. 2001) ("All legislation promotes the public welfare to some degree."). Cleveland v. U.S. Printing Ink, Inc.,218 Conn. 181, 199, 588 A.2d 194 (1991) ("All legislation is remedial. . . .").
It is also true that in Link v. Shelton, 186 Conn. 623, 627, 443 A.2d 902
(1982), and in State v. Vega, 44 Conn. App. 499, 503, 691 A.2d 22, cert. denied, 240 Conn. 930, 693 A.2d 302 (1997), the Supreme Court stated that courts "may look to the meaning given the same phrase in unrelated statutes . . . and consider that where the legislature uses the same phrase it intends the same meaning." Link v. Shelton, supra, 186 Conn. 627. In Link, however, the phrase at issue was "in the course of his duty" — — "a term of art, or technical phrase" id. — — that irresistibly conjures up the provision of the worker's compensation statute.[4] See also Cislo v. Shelton, 40 Conn. App. 705,712, 673 A.2d 134 (1996), rev'd on other grounds, 240 Conn. 590,692 A.2d 1255 (1997). In State v. Vega, supra, 44 Conn. App. 499, the court did not import a definition in one statute into another, but imported the provisions of a Practice Book rule defining when a witness CT Page 5454 was to be considered unavailable into the judge made Secondino, or missing witness rule.[5] That is, in State v. Vega judge-made law was superimposed on judge-made law by judges. State v. Vega, supra, does not aptly apply the rule in Link.
The term "serious physical injury" is not a term of art. In cases such as that here, "[o]nly statutory provisions relating to the same subject matter may be looked to for guidance." Connecticut Light Power Co. v.Costle, 179 Conn. 415, 422, 426 A.2d 1324 (1980); see Connecticut Light Power Co. v. Texas-Ohio Power, Inc., 243 Conn. 635, 647, 708 A.2d 202
(1998); State v. Hill, 201 Conn. 505, 515, 523 A.2d 1252 (1986) (applying penal code definitions in title 53a to narcotics offenses codified in title 19). As discussed supra, the penal code and § 46b-12 do not relate to the same subject matter.
Moreover, General Statutes § 53a-3 expressly provides that the definitions contained therein "have the following meaning when used in this title . . .'" (Emphasis added.) It therefore "appears the legislature intended to restrict the scope of this provision to Title 53a only." State v. Hill, supra, 201 Conn. 515 n. 7. "The legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them." (Internal quotation marks omitted.) Nunno v. Wixner, 257 Conn. 671, 682, 778 A.2d 145
(2001).
This is not to say that there may not be a vast concurrence between the definition of serious physical injury in § 53a-3 and the common law definition, since the statutory definition is not a technical one. It is to say that there is no evidence that the legislature intended that the definition of serious physical injury in the Penal Code be imported into § 46b-129.
Since this court holds that the term "serious physical injury" in § 46b-129 (b) is not subject to a statutory definition, it is appropriate to look "to the common understanding of the word[s] as defined in dictionaries." Smith v. Smith, 249 Conn. 265, 280, 752 A.2d 1023
(1999); see General Statutes § 1-1 (a). "Serious," in this context, means "having important or dangerous possible consequences." Merriam Webster's Collegiate Dictionary (10th Ed. 1996). "Physical," in this context, means "of or relating to the body." Id. "Injury," in this context, means "hurt, damage or loss sustained." Id.
The injury here was a cigarette burn to an infant three months of age. Whether this was a serious physical injury is a question of fact. SeeState v. Almeda, 211 Conn. 441, 450, 560 A.2d 389 (1989); State v.Miller, 202 Conn. 463, 489, 522 A.2d 249 (1987); State v. Nival, CT Page 545542 Conn. App. 307, 309, 678 A.2d 1008 (1996); State v. Huckabee,41 Conn. App. 565, 570-71, 677 A.2d 452, cert. denied, 239 Conn. 903,682 A.2d 1009 (1996) (holding, albeit under § 53a-3, that "[a] bullet wound is not per se serious physical injury."). As such, the issue presented a question over which reasonable people could reasonably differ. See Anderson v. Anderson, 191 Conn. 46, 53, 463 A.2d 678 (1983);Cricca v. Bosak, 153 Conn. 89, 92, 214 A.2d 359 (1965); Bader v. UnitedOrthodox Synagogue, 148 Conn. 449, 455, 172 A.2d 192 (1961).
"No bright line exists between physical injury and serious physical injury. . . ." State v. Nival, supra, 42 Conn. App. 309. Based on the photograph admitted into evidence, the court might well have found that there was a serious physical injury. However, considering the evidence as a whole, including the testimony of the physician, the court found this not to be so. This is not to say that such a wound may not indeed be a serious physical injury, especially to an infant. It is to say that the fact was not proven by the petitioner. On a motion for an order of temporary custody, the burden of proof is on the commissioner by a fair preponderance. In re Juvenile Appeal (83-CD), supra, 189 Conn. 276.
BY THE COURT
Bruce L. Levin Judge of the Superior Court