STATE OF CONNECTICUT *v.* ISRAEL MADERA
(12377)

SHEA, DANNEHY, SANTANIELLO, L. DORSEY and KLINE, Js.

Argued October 2—decision released December 17, 1985

*John F. Murphy, Jr.,* with whom were *Timothy S. Fisher, Frank F. Coulom, Jr.,* and, on the brief, *Susan C. Marks* and *Peter J. Ennis,* for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom were *Walter H. Scanlon,* chief assistant state's attorney, *Michael E. O'Hare,* deputy assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, and *Elizabeth Fitzpatrick,* legal intern, for the appellee (state).

SHEA, J. The defendant has appealed from his conviction upon a conditional plea of nolo contendere to an indictment charging him with fourteen counts of arson murder in violation of General Statutes § 53a-54d,[1] one for each of the victims who died in the fire of an apartment building in Waterbury. The trial

---

[1] "[General Statutes] Sec. 53a-54d. ARSON MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits arson and, in the course of such arson, causes the death of a person. Notwithstanding any other provision of the general statutes, any person convicted of murder under this section shall be punished by life imprisonment and shall not be eligible for parole."

court imposed on each count the statutorily mandated sentence of life imprisonment without eligibility for parole and structured the sentences on the fourteen counts as consecutive or concurrent to result in an effective sentence of two consecutive life terms, 120 years of imprisonment pursuant to General Statutes § 53a-35b, without eligibility for parole.[2] The defendant has raised three claims of error: (1) the denial of his motion to suppress his statement to the police after he had been arrested at the scene of the fire; (2) the denial of his motion to dismiss which he based upon the claimed unconstitutionality of our arson murder statute, § 53a-54d, by virtue of its inclusion of reckless as well as intentional conduct as a sufficient basis to satisfy the "arson" element of the offense; and (3) the imposition of two consecutive terms of life imprisonment. We reach only the third of those issues, because on the record before us the condition upon which the plea was entered, that the defendant obtain review by this court of the rulings upon his motions to suppress and to dismiss, cannot be fulfilled. Accordingly, we remand the case to the trial court with direction to vacate the plea and for further proceedings.

---

[2] The court made the life imprisonment terms in counts three to eight concurrent with that imposed in count one. A consecutive life imprisonment term was imposed in count two and the terms imposed in counts nine to fourteen were concurrent with that count. General Statutes § 53a-35a, effective July 1, 1981, and applicable to crimes committed after that date, "instituted definite sentencing and effectively eliminated parole in Connecticut . . . . The effect of General Statutes § 53a-35a is to put the arson murder statute in the context of a definite sentencing scheme and to render the phrase 'shall not be eligible for parole' in the statute meaningless . . . . General Statutes § 53a-54d remains effective to make arson murder a crime and to require anyone convicted of that offense to receive a life sentence." *State* v. *Dupree,* 196 Conn. 655, 659–60, 495 A.2d 691 (1985).

In view of the result we reach that further trial court proceedings are necessary, we need not consider the effect of § 53a-35a upon the sentences imposed in this case, the defendant having raised no claim of error in that respect.

The state recited the following factual basis for the defendant's plea at the time it was accepted by the trial court: In the early morning hours of July 5, 1982, the defendant visited the apartment of his niece at 45–47 Prospect Street in Waterbury. The defendant argued with his niece concerning his drinking and also about a fire he had started, by his carelessness with a cigarette, on the couch in her apartment. After the defendant complied with her request to leave the apartment, he returned to borrow some matches. A short time later, the defendant set fire to some papers on the stairway of the building. Although the police and fire units of the city of Waterbury arrived on the scene quickly, the blaze had already consumed the building. The defendant was arrested at the scene of the fire at approximately 2 a.m. He was advised of his constitutional rights in English and asked if he understood them. The defendant replied that he did. The defendant was informed that he was under arrest and that he was accused of setting the fire. The defendant denied the accusation.

The defendant was then transported to the Waterbury police station and again advised of his constitutional rights. He continued, when questioned, to maintain his innocence. Following this second inquiry, he became ill and fell to the floor of his cell. He was taken to the emergency room at St. Mary's Hospital in Waterbury. The defendant's condition was diagnosed by a staff physician at the emergency room as an "anxiety reaction" and he was discharged from the hospital. The defendant was advised of his rights for the third time at approximately 9 a.m., and he again denied that he had set the fire. After spending the remainder of the day in his cell, he was summoned for further questioning at approximately 8 p.m. The defendant was again advised of his rights. He indicated that he understood them, and that he wished to make a statement,

expressly waiving his right to have a lawyer present. Because the defendant had some difficulty describing the incident in English, a Spanish speaking officer was instructed to assist him. At this time he was advised of his rights in Spanish, and he once again indicated that he understood them. At approximately 8:30 p.m., the defendant confessed to starting the fire by igniting some papers on the apartment stairway. His entire statement was given in English. After the statement was transcribed, he signed it and also initialed an additional paragraph noting that the document had been read back to him in both Spanish and English. The defendant also signed a form acknowledging that he had waived his constitutional rights.

The defendant filed a motion to suppress his confession. At the hearing on the motion he claimed that the state had failed to meet its burden of proving by a preponderance of the evidence that he had effectively waived his *Miranda*[3] rights and that his confession was voluntary. In relation to those issues he presented psychiatric testimony concerning his mental condition. The trial court denied the motion. The defendant also filed a motion to dismiss the indictment claiming that the arson murder statute violates the federal constitution insofar as the arson which is an element of the crime of arson murder may be arson in either the second or third degree. He claimed that the statutorily mandated sentence would be disproportionate to the crime charged, violating the eighth amendment prohibition against cruel and unusual punishment. The trial court denied the motion to dismiss, concluding that the defendant's motion was premature because it was based upon the speculative assumption that any verdict in this case would be predicated on either second or third degree arson. On September 8, 1983, the

---

[3] See *Miranda* v. *Arizona,* 384 U.S. 436, 475, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

defendant entered pleas of nolo contendere to each of the fourteen counts of arson murder, reserving his right to appeal the court's denial of his pretrial motions under General Statutes § 54-94a.[4]

I

As a general rule, an *unconditional* plea of guilty or nolo contendere,[5] intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. *Tollett* v. *Henderson,* 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973); *Parker* v. *North Carolina,* 397 U.S. 790, 90 S. Ct. 1458, 25 L. Ed. 2d 785 (1970); *McMann* v. *Richardson,* 397

[4] "[General Statutes] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[5] "A plea of nolo contendere has the same legal effect as a plea of guilty on all further proceedings within the indictment. *North Carolina* v. *Alford,* 400 U.S. 25, 35–36 n.8, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Lawrence* v. *Kozlowski,* 171 Conn. 705, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); see *State* v. *Godek,* 182 Conn. 353, 363–64, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981). The only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case. 4 Wigmore, Evidence (Chadbourn Rev. 1972) § 1066 (2), p. 81; Lenvin & Meyers, 'Nolo Contendere: Its Nature and Implications,' 51 Yale L.J. 1255 (1942)." *State* v. *Martin,* 197 Conn. 17, 20–21 n.7, 495 A.2d 1028 (1985). It is clear, however, that a nolo contendere plea also constitutes a waiver of all nonjurisdictional defects in a manner equivalent to a guilty plea. *Lott* v. *United States,* 367 U.S. 421, 81 S. Ct. 1563, 6 L. Ed. 2d 940 (1961); *United States* v. *DePoli,* 628 F.2d 779, 781 (2d Cir. 1980).

U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Brady* v. *United States,* 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); *State* v. *Martin,* 197 Conn. 17, 25, 495 A.2d 1028 (1985); *Consiglio* v. *Warden,* 160 Conn. 151, 166, 276 A.2d 773 (1970). Therefore, only those issues fully disclosed in the record which relate either to the exercise of jurisdiction[6] by the court or to the voluntary and intelligent nature of the plea are ordinarily appealable after a plea of guilty or nolo contendere. *Boykin* v. *Alabama,* 393 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Godek,* 182 Conn. 353, 357, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981); see also Practice Book § 712.

The legislature in 1982 altered the broad waiver of constitutional rights implicit in a plea of guilty or nolo contendere. Public Acts 1982, No. 82-17. General Statutes § 54-94a allows a defendant to enter a plea of nolo contendere, conditional on the right to take an appeal from the trial court's denial of a motion to suppress evidence based on an unreasonable search and seizure, or from the denial of a motion to dismiss. See *State* v. *Martin,* supra, 25 n.12; *State* v. *Ross,* 189 Conn. 42, 50 n.4, 454 A.2d 266 (1983); *State* v. *Satti,* 2 Conn. App. 219, 222, 477 A.2d 144 (1984). The defendant entered

---

[6] A plea, whether conditional or unconditional, does not preclude review of "jurisdictional defects." Those defects have been characterized as those which would prevent a trial from occurring in the first place. Saltzburg, "Pleas of Guilty and the Loss of Constitutional Rights: The Current Price of Pleading Guilty," 76 Mich. L. Rev. 1265, 1285–86 (1978). Thus, after an unqualified plea of guilty or nolo contendere, a defendant may challenge his conviction if the conviction is in violation of the double jeopardy clause; *Menna* v. *New York,* 423 U.S. 61, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975); if the court lacks subject matter jurisdiction over the case; *Blackledge* v. *Perry,* 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974); or if the statute under which the defendant is charged is unconstitutional. *Haynes* v. *United States,* 390 U.S. 85, 87 n.2, 88 S. Ct. 722, 19 L. Ed. 2d 923 (1968); see 1 Wright, Federal Practice and Procedure: Criminal 2d (1982) § 175, pp. 624–28.

his plea under this statute. The record reveals that neither the trial court nor the state had any objection to this procedure.

The threshold question on this appeal is whether the issues reserved for review by this court are within the ambit of § 54-94a. The defendant reserved two claims, one relating to the voluntariness of his confession, the other attacking the constitutionality of the arson murder statute. Clearly, the former is not within the purview of the statute. Under § 54-94a, an appeal is permitted from the denial of a motion to suppress "evidence based on an unreasonable search and seizure" only. The defendant in this case argues that his confession was illegally obtained because his lack of facility with the English language, as well as his alleged mental impairment, made it impossible for him to relinquish his rights effectively. Such a basis for a motion to suppress, implicating the fifth and sixth amendments, is not included in the statutory language allowing appeals only from the denial of a motion to suppress evidence obtained from an illegal search or seizure in violation of the fourth amendment. Moreover, there is nothing in the legislative history of the statute that would suggest such an intention.[7]

The question remains whether we should exercise our inherent supervisory authority over the administration

[7] During the regular session of the senate, Senator Howard T. Owens, Jr., moved for acceptance of the joint committee's report and the passage of the bill. 1982 Sess., S.B. 20. In describing the function of the bill, the senator gave an example involving a defendant charged with possession of cocaine who wants to challenge the search and seizure warrant as ineffective. The senator explained that in the absence of a conditional plea procedure, the defendant is forced to go through the entire expense of trial, merely to appeal an unfavorable ruling on his motion to suppress. Nowhere in the legislative history is it suggested that § 54-94a could be used to challenge a motion to suppress anything other than evidence obtained contrary to search and seizure principles. See 25 S. Proc., Pt. 2, 1982 Sess., pp. 350–53; 25 H. R. Proc., Pt. 3, 1982 Sess., pp. 587–91.

of justice; *State* v. *Cohane,* 193 Conn. 474, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984), citing *United States* v. *Butler,* 567 F.2d 885, 893 (9th Cir. 1978); and adopt a procedure that would allow criminal defendants to enter pleas based upon conditions other than those specified in § 54-94a.

Prior to the advent in 1983 of federal rule of criminal procedure 11 (a) (2),[8] which allows a conditional plea of guilty or nolo contendere with a reservation of the right to appeal rulings on *"any* specified pretrial motion,"* the federal courts were divided on the permissibility of such a plea.[9] (Emphasis added.) Although the adoption of the rule appears to have quieted some concerns that had arisen; *United States* v. *Morrison,* 449 U.S. 361, 363 n.1, 101 S. Ct. 665, 66 L. Ed. 2d 564, reh. denied, 450 U.S. 960, 101 S. Ct. 1420, 67 L. Ed. 2d 385 (1981); cf. *Lefkowitz* v. *Newsome,* 420 U.S. 283, 292, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975); *McMann* v. *Richardson,* supra, 770 n.13; it has not entirely stilled objections that the procedure (1) encourages appellate litigation; (2) militates against achieving finality in the disposition of criminal cases; (3) reduces the effectiveness of appellate review because of the absence of a

---

[8] Rule 11 (a) (2) of the federal rules of criminal procedure provides: "With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea."

[9] Two circuits had approved the entry of conditional pleas; *United States* v. *Moskow,* 588 F.2d 882 (3d Cir. 1978); *United States* v. *Burke,* 517 F.2d 377 (2d Cir. 1975); while two others had merely praised the concept. *United States* v. *Clark,* 459 F.2d 977 (8th Cir. 1972); *United States* v. *Dorsey,* 449 F.2d 1104 (D.C. Cir. 1971). Three circuits had concluded that the use of the conditional plea in the absence of statutory authority or court rule is improper. *United States* v. *Brown,* 499 F.2d 829 (7th Cir. 1974); *United States* v. *Sepe,* 474 F.2d 784, aff'd en banc, 486 F.2d 1044 (5th Cir. 1973); *United States* v. *Cox,* 464 F.2d 937 (6th Cir. 1972); see generally *United States* v. *DePoli,* 628 F.2d 779, 781 (2d Cir. 1980).

full trial record; and (4) compels decisions on many issues, constitutional or otherwise, that would often be obviated by applying the harmless error doctrine in the light of a full trial record. Comment, "Conditional Guilty Pleas: Post Guilty Plea Appeal of Nonjurisdictional Issues," 26 U.C.L.A.L. Rev. 360, 375 (1978). Balanced against these considerations is the obvious gain in judicial efficiency that is realized whenever a full trial can be avoided as well as the opportunity afforded to defendants to enter a plea without foregoing substantial constitutional claims. *Lefkowitz* v. *Newsome,* supra, 292.

The conditional plea is susceptible to abuse, however, unless its use is carefully limited to significant issues the determination of which on appeal is likely to be dispositive of the case. See *United States* v. *Lace,* 669 F.2d 46, 53 n.5 (2d Cir. 1982) (Newman, J., concurring). For this reason, the recent federal rule provides that the reserved issues must be specified in writing and that consent of the prosecutor as well as approval by the court are necessary for entry of a conditional plea. Fed. R. Crim. P., rule 11 (a) (2). Our statute, § 54-94a, does not contain these safeguards against potential abuse. The inherent power of the trial court to reject such a plea where it is clearly inappropriate affords some protection against misuse of the statutory procedure, but the court is not in a position to evaluate adequately such prosecutorial concerns as the significance of a particular ruling to the ultimate disposition of a case or the problems entailed by delaying a trial for the period necessary to obtain appellate review. The prosecutor is ordinarily much more familiar with the evidence to be presented that may not be affected by the ruling and also with the effect of delay incident to an appeal upon the availability of witnesses. Even where the prosecutor looks favorably on the conditional plea, as the state apparently does here, the parties, as well as the trial

court, must be sure that the issues reserved can properly be reviewed on the record available. Though we perceive no problem in reviewing the ruling upon the admissibility of the defendant's confession in this case, we have concluded, for reasons explained in part II of this opinion, that the issue of whether the arson murder statute violates the constitutional prohibition against cruel and unusual punishment cannot be properly resolved at this stage of the proceeding. The improvident reservation of that issue under the plea has resulted in a delay of more than two years in the ultimate disposition of this case.

We are not inclined, therefore, on this occasion to resort to our general supervisory powers over appellate procedure; Practice Book §§ 3096, 3063, 3164; *State* v. *Cohane,* supra, 499; to allow the reservation under a conditional plea of rulings on pretrial motions beyond those expressly permitted by the statute.[10] It would be unwise to invoke our authority by reviewing the denial of the motion to suppress the confession because the condition of the defendant's plea was that he obtain an appellate determination on the merits both of that ruling and of the denial of his motion to dismiss which, as we have indicated, the record does not permit. We also are of the view that until a rule has been fashioned containing safeguards similar to those embodied in federal rule 11 (a) (2), the trial courts should not employ this procedural innovation except in situations plainly within the provisions of § 54-94a.[11]

---

[10] We need not consider whether General Statutes § 54-94a is a rule of practice or procedure not binding upon the Superior or Supreme Courts of this state; *State* v. *Clemente,* 166 Conn. 501, 507, 353 A.2d 723 (1974); since the trial court implicitly acquiesced in the statutory procedure. See *Adams* v. *Rubinow,* 157 Conn. 150, 156, 251 A.2d 49 (1968). This court also approves the conditional plea procedure set forth in the statute subject to the general authority of the trial court to refuse to accept such a plea where it is inappropriate, as in this case.

[11] We are not presented in this case with claims of the inadmissibility of statements of a defendant to the police that are intertwined with a motion

## II

Because § 54-94a permits a defendant to reserve for appeal the denial of a motion to dismiss, the second claim reserved by the defendant, attacking the constitutionality of the arson murder statute, appears to fall within the scope of the conditional plea statute. We conclude, nevertheless, that the contemplated appellate determination of that issue on the merits cannot be had on the state of the record before us.

The defendant moved to dismiss the indictment insofar as the arson murder charges were predicated upon his commission of arson in the second or third degree rather than arson in the first degree. He claimed that, since such offenses are designated as class B and C felonies and require a less culpable state of mind than arson in the first degree, a class A felony, the penalty provided for arson murder is unconstitutionally disproportionate to the crime and, therefore, constitutes cruel and unusual punishment prohibited by the eighth amendment to our federal constitution. See *Solem* v. *Helm,* 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). In denying this motion to dismiss, the trial court distinguished the *Solem* precedent relied upon by the defendant because of the more serious nature of the

to suppress evidence based on an unreasonable search and seizure, as in our recent decision of *State* v. *Torres,* 197 Conn. 620, 500 A.2d 1299 (1985). In that case the ruling on the motion to suppress had been properly reserved under General Statutes § 54a-94a. Considerations of fairness and judicial economy dictated that the closely related issues concerning the statements of the defendant made during the search as well as afterward should also be resolved. In the case on appeal, the issues concerning the confession are not related to a claim of an unlawful search. Furthermore, as discussed in part II, the remaining issue reserved involving the constitutionality of General Statutes § 53a-54d, our arson murder statute, cannot be reviewed on the present record. Thus none of the issues reserved under the nolo contendere plea is properly before us.

offenses charged in this case, but ultimately held that, regardless of the merits of his unconstitutionality claim, the defendant could not before trial assume that a guilty verdict would necessarily be based upon arson in the second or third degree. The defendant has at no time raised a constitutional challenge to a conviction of arson murder predicated upon arson in the first degree.

At the plea proceedings the state's narrative of the factual basis for the plea indicated that the defendant had intentionally ignited some papers that he had spread on a stairway of an apartment building occupied by his niece as well as others and thus started a conflagration that resulted in the deaths of fourteen persons. The state referred also to the confession of the defendant in which he admitted visiting the apartment of his niece and starting a fire on a couch within the apartment because of his carelessness with a cigarette. In its response to a motion for disclosure of uncharged misconduct, the state had declared that evidence would be offered that the defendant had started a fire on the couch in the apartment of his niece shortly before he started the fire on the stairway that consumed the premises. The state has contended that the second fire was the sole cause of the death of the fourteen victims. The defendant, however, has argued that, since he does not dispute negligently starting a fire on the couch in the apartment of his niece, which may not have been wholly extinguished when he left the apartment and might have later flared up and consumed the building, a jury might find his conduct with a cigarette to constitute the recklessness required for arson in the third degree.[12] Thus he maintains that, if the arson murder

---

[12] In the defendant's motion to dismiss, he challenged the constitutionality of an arson murder conviction predicated on both second and third degree arson. It appears, however, that he has abandoned his claim as to second degree arson, as it was addressed neither in his brief nor during oral argument. It should be noted that both first and second degree arson require a specific intent "to destroy or damage a building." General Stat-

statute is construed to allow a person to be convicted for merely reckless conduct in causing a fire that results in a death, it is unconstitutional because the severe penalties provided are greatly disproportionate to the offense.

This court does not embark upon the resolution of questions involving the validity of a statute in the absence of a practical necessity for their determination in the case presented and a sufficient factual background for their adjudication. *Alexander* v. *Robinson,* 185 Conn. 540, 548, 441 A.2d 166 (1981). "The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." *Parker* v. *Los Angeles,* 338 U.S. 327, 333, 70 S. Ct. 161, 94 L. Ed. 144 (1949); see *Moscone* v. *Manson,* 185 Conn. 124, 134, 440 A.2d 848 (1981) (*Healey, J.,* concurring); *State* v. *DellaCamera,* 166 Conn. 557, 560, 353 A.2d 750 (1974). Appropriate deference to a coordinate branch of government exercising its essential functions demands that we refrain from deciding constitutional challenges to its enactments until the need to do so is plainly evident. See *Poe* v. *Ullman,* 367 U.S. 497, 503–506, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961); Tribe, American Constitutional Law § 3-10. The defendant never attempted in his motion for a bill of particulars to ascertain whether the state would rely upon the fire of the couch as the predicate for the arson murder charged in the indictment. It appears quite unlikely, nevertheless, that any occasion will arise in this case to require a determination of the constitutional issues raised by the defendant. The state declared at the plea proceeding that the arson relied upon in the indictment was based upon the fire the defendant had intentionally started on the stair-

utes §§ 53a-111, 53a-112. Arson in the third degree occurs where a person "recklessly causes destruction or damage to a building . . . by intentionally starting a fire or causing an explosion." General Statutes § 53a-113.

way for the purpose of destroying the building, a position it has also maintained on appeal. Such a scenario, involving intentional conduct solely, would not implicate the recklessness that is the gravamen of arson in the third degree. "Our penal code . . . expressly defines the terms 'intentionally' and 'recklessly' in such manner as to render them mutually exclusive." *State* v. *Ruiz,* 171 Conn. 264, 271, 368 A.2d 222 (1976); see General Statutes § 53a-3 (11) and (13). Thus it appears that no occasion amounting to a "practical necessity" will arise in this case to require a determination of the constitutional issues raised by the defendant.

Furthermore, the defendant cannot mount a constitutional challenge to a statute on the basis of its possible applications in circumstances not presented by his own case, unless first amendment freedoms are affected, a situation not claimed to exist here. *State* v. *Pickering,* 180 Conn. 54, 57–58, 428 A.2d 322 (1980); *State* v. *Cuvelier,* 175 Conn. 100, 111–12, 394 A.2d 185 (1978). "According to well-established principles, a [party] who challenges the constitutionality of a statute must prove that the statute has adversely affected a constitutionally protected right 'under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist.' " *Weil* v. *Miller,* 185 Conn. 495, 501, 441 A.2d 142 (1981). "[J]udicial power is to be exercised to strike down legislation, whether state or federal, only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action." *Poe* v. *Ullman,* supra, 504; *United Public Workers* v. *Mitchell,* 330 U.S. 75, 90, 67 S. Ct. 556, 91 L. Ed. 754 (1947). In the absence of a clear indication in the record that the state is relying upon a claim that the defendant "recklessly" caused the destruction of the apartment building and thus committed arson in the third degree as the predicate offense for arson mur-

der, the defendant is not entitled to an adjudication of the constitutional claims raised in his motion to dismiss. As we have noted, the present record discloses that the state asserts the contrary, relying wholly upon a claim that the defendant intended to destroy or damage the apartment building when he started the fire on the stairway.

Because the defendant's appeal from the denial of the motion to dismiss, as well as his appeal from the motion to suppress his statement, are not properly reviewable by this court, we are unable to fulfill the plea agreement entered into between the defendant and the prosecutor. The defendant expressly bargained for appellate review of both rulings of the trial court "on the merits."[13] Our inability to comply with this agreement constitutes a failure of consideration in the plea bargaining process. See *Santobello* v. *New York,* 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). Such a failure requires this court to vacate the defendant's pleas on the ground that they did not "constitute knowing and intelligent voluntary waivers of constitutional rights made with sufficient awareness of the relevant circumstances and likely consequences." *United States* v. *Cox,* 464 F.2d 937, 946 (6th Cir. 1972); see *Boykin* v. *Alabama,* supra; *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). A plea induced

[13] The written plea of nolo contendere provided as follows: "Upon the acceptance of this plea and the entry of judgment of guilty by the Court, the defendant will seek appellate review of the denial of these motions. Should the Court's rulings on these motions be affirmed on the merits, and there be no other change in the pretrial rulings and determinations made to date, then this plea of nolo contendere will become final. Should the Supreme Court fail to affirm any or all of this Court's rulings on these motions on the merits, however, this plea of nolo contendere will be withdrawn." In view of these conditions of the plea it is curious that the state, though agreeable to review of the motion to suppress the confession, opposes review of the defendant's constitutional claims on the merits on the ground that the issue is not properly before us on the present record, a contention we have found persuasive.

by a court-approved promise that could not be fulfilled cannot be viewed as voluntary. *United States* v. *White,* 583 F.2d 819, 826 (6th Cir. 1978); *United States* v. *Swann,* 574 F.2d 1316, 1318 (5th Cir. 1978); *United States* v. *Hill,* 564 F.2d 1179, 1180 (5th Cir. 1977). Because the defendant is foreclosed from raising the reserved issues before this court, and because the plea was given in reliance on his ability to pursue his appellate remedy, the judgment of conviction must be set aside and the matter remanded to the Superior Court for further proceedings.

### III

The remaining claim of error, that the court imposed two consecutive terms of life imprisonment on the defendant, though presenting a constitutional question, does not involve the validity of the arson murder statute but the application of it by the trial court. The statute does not specify whether sentences imposed for its violation under separate counts must be consecutive or concurrent, leaving that determination to the judicial discretion of the court pursuant to General Statutes § 53a-37. The defendant contends that consecutive life sentences based upon a single act of arson violate the double jeopardy clause of the eighth amendment to the federal constitution as well as the prohibition against being "punished, except in cases clearly warranted by law" of article first, § 9, of our state constitution.[14] Our reluctance to decide constitutional issues in advance of a present need for their determination is overcome in this instance by three factors: (1) the

---

[14] The claim that the sentences imposed violate our state constitution was not included in the motion to dismiss filed in the trial court. In this court, the defendant's brief refers to article first, § 9, without any analysis of its language in relation to his double jeopardy claim. Article first, § 9, provides as follows: "No person shall be arrested, detained or punished, except in cases clearly warranted by law." In the absence of some explanation, we find it difficult to understand the application of this provision to the

issues do not involve the invalidation of any legislative enactment; (2) there is a practical necessity to resolve the issues at this time, because they are likely to arise once more at the sentencing proceeding, even though the trial court is not obligated to impose the same sentence, in the event of another conviction of the defendant; and (3) ample precedent supports our practice of reviewing claims of error not essential to the disposition of the appeal that will probably recur when a case is remanded for further proceedings. *State* v. *Morrill,* 197 Conn. 507, 509, 498 A.2d 76 (1985); Maltbie, Conn. App. Proc. § 341; see *State* v. *Couture,* 194 Conn. 530, 566, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

The defendant's claim that the two consecutive life sentences imposed on him violate the double jeopardy clause of our federal constitution invokes the protection afforded by that provision against multiple punishments for the same offense. *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri* v. *Hunter,* 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). As the defendant recognizes in his brief, the issue, though essentially constitutional, becomes one of statutory construction.

We recently rejected a double jeopardy challenge to consecutive life sentences imposed for the felony murder of two of the victims of the same robbery on the ground that the reference to the death of "a person"

issues before us. *State* v. *McNally,* 152 Conn. 598, 602, 211 A.2d 162 (1965). It is, perhaps, possible that the defendant was referring to article first, § 8, of our state constitution which has been interpreted to include the double jeopardy protection as an element of due process. See *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626 (1962).

in General Statutes § 53a-54c, our felony murder statute, was in the singular. *State* v. *Couture,* supra, 565. The same language, "causes the death of a person," is used in the arson murder statute, § 53a-54d, to describe that element of the crime. "A fundamental purpose of the criminal law is to protect individual citizens from the criminal conduct of another. People are neither fungible nor amorphous. Where crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore, when two or more persons are the victims of a single episode there are as many offenses as there are victims." *State* v. *Couture,* supra, 565–66; *State* v. *Gunter,* 132 Ariz. 64, 70, 643 P.2d 1034 (1982); *State* v. *Irvin,* 603 S.W.2d 121 (Tenn. 1980); *Vigil* v. *State,* 563 P.2d 1344, 1351 (Wyo. 1977).

The defendant argues that an intention to impose the same punishment for the single act of arson regardless of the number of deaths caused may be gleaned from the legislative history of § 53a-54d as well as of the provision of our capital felony statute; General Statutes § 53a-54b (8); that makes a person susceptible to punishment by death who is convicted of the "murder of two or more persons at the same time or in the course of a single transaction." We are unpersuaded. Nothing in the legislative history is of such significance as to overcome the reference in § 53a-54d to the death of a single person as an essential element of the crime of arson murder, a consideration we found persuasive in the parallel situation of felony murder. *State* v. *Couture,* supra, 565. The express reference to multiple murders in § 53a-54b as a basis for a capital felony does not militate against treatment of a single act of arson resulting in the death of multiple victims as separate offenses under § 53a-54d.

There is error in accepting the plea of nolo contendere with conditions that could not be fulfilled under our procedures, the judgment is set aside and the case is remanded to the trial court for further proceedings.

In this opinion the other judges concurred.