[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a petition of writ of habeas corpus in which the Petitioner claims he is illegally confined for the following reasons:
 First Count: The Petitioner's right to equal protection of the law under the United States Constitution, Amendment XIV
was violated in that the Petitioner, a black male, was indicted by a grand jury drawn from an array on which members of his race were substantially underrepresented as a result of the selection procedure used by the high sheriff to summon persons for grand jury service.
 Second Count: The Petitioner's right to the effective assistance of counsel under the United States Constitution, Amendments VI and XIV, was violated in that his trial counsel failed to investigate adequately and inform him of the viability of a constitutional challenge to the racial composition of the array from which his grand jury was selected.
 Third Count: The Petitioner's right to equal protection of the law under the Connecticut Constitution, Article First, Section XX, was violated in that the Petitioner, a black male, was indicted by a grand jury drawn from an array of which members of his race were substantially underrepresented as a result of the selection procedure used by the high sheriff to summon persons for grand jury service. CT Page 2463
 Fourth Count: The Petitioner's right to the effective assistance of counsel under the Connecticut Constitution, Article First, Section Eight, was violated in that his trial counsel failed to investigate adequately and inform him of the viability of a constitutional challenge to the racial composition of the array from which his grand jury was selected.
PROCEDURAL HISTORY
Many of the underlying facts which give rise to the Petitioner's claim are not in dispute.
On or about December 12, 1979, the Petitioner was indicted and charged by a grand jury in the Judicial District of New Haven with the crime of murder, a violation of General Statutes Section 53a-54a. On January 8, 1981, the Petitioner appeared before the Honorable Howard F. Zoarski and pled guilty. Final judgment was rendered on February 20, 1981, when the trial court sentenced the Petitioner to seventeen years to life imprisonment.
Additional facts will be found as appropriate to the issues in question.
In a habeas corpus petition, the petitioner has the burden of proof of establishing the underlying facts that form the basis of the claimed violations by a fair preponderance of the evidence. Arey v. Warden, 187 Conn. 324, 331 (1982); Blue v. Robinson, 173 Conn. 360, 370 (1977).
RESPONDENT'S CLAIMS
The Respondent raises the following claims in arguing that the Court should not reach the merits of the Petitioner's grand jury equal protection claim: (1) the Respondent's claim that the Petitioner's grand jury equal protection claim should not be reviewed on the merits because the Petitioner's guilty plea forecloses independent inquiry into the grand jury matter; and (2) the Respondent's claim that the "cause and prejudice" standard, rather than the "bypass standard," should be used to justify the Petitioner's failure to pursue his grand jury equal protection claim prior to entering his guilty plea and the Respondent's claim that the Petitioner has not met his "cause and prejudice" standard.
The merits of the Petitioner's grand jury equal protection claim has to be reached only if the Court finds: CT Page 2464 (1) the Petitioner's plea of guilty has not foreclosed independent inquiry into the grand jury selection matter; and (2) the Petitioner has met the appropriate standard of review, whether it be the "bypass standard" or the "cause and prejudice standard."
These claims will be discussed seriatim.
 I. THE RESPONDENT'S CLAIM THAT THE PETITIONER'S GRAND JURY EQUAL PROTECTION CLAIM SHOULD NOT BE REVIEWED ON THE MERITS BECAUSE THE PETITIONER'S GUILTY PLEA FORECLOSES INDEPENDENT INQUIRY INTO THE GRAND JURY MATTER
The basic rule regarding the effect of a plea of guilty, as found in State v. Madera, 198 Conn. 92, 97-98
(1985), is as follows:
 As a general rule, an unconditional plea of guilty or nolo contendere, intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Brady v. United States, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); State v. Martin, 197 Conn. 17, 25, 495 A.2d 1028
(1985); Consiglio v. Warden, 160 Conn. 151, 166, 276 A.2d 773 (1970). Therefore, only those issues fully disclosed in the record which relate either to the exercise of jurisdiction by the court or to the voluntary and intelligent nature of the plea are ordinarily appealable after a plea of guilty or nolo contendere. Boykin v. Alabama, 393 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Godek, 182 Conn. 353, 357, 438 A.2d 114
(1980); cert. denied. 450 U.S. 1031, 191 S.Ct. 1741, 68 L.Ed.2d 226 (1981); see also Practice Book Section 712.
Note 5. "A plea of nolo contendere CT Page 2465 has the same legal effect as a plea of guilty on all further proceedings within the indictment. North Carolina v. Alford, 400 U.S. 25, 35-36, n. 8, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Lawrence v. Kozlowski, 171 Conn. 705, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 182 Conn. 353, 363-64, 438 A.2d 114
(1980), cert. denied, 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981). The only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case. 4 Wigmore, Evidence (Chadbourn Rev. 1972) Sec. 1066(2), p. 81; Lenvin Meyers, `Nolo Contendere: Its Nature and Implications,' 51 Yale L.J. 1255 (1942);" State v. Martin, 197 Conn. 17, 20-21 n. 7, 495 A.2d 1028 (1985). It is clear, however, that a nolo contendere plea also constitutes a waiver of all nonjurisdictional defects in a manner equivalent to a guilty plea. Lott v. United States, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961); United States v. DePoli, 628 F.2d 779, 781 (2d Cir. 1980).
 Note 6. A plea, whether conditional or unconditional, does not preclude review of "jurisdictional defects. Those defects have been characterized as those which would prevent a trial from occurring in the first place. Saltzburg, "Pleas of Guilty and the Loss of Constitutional Rights: The Current Price of Pleading Guilty," 76 Mich. L. Rev. 1265, 1285-86 (1978). Thus, after an unqualified plea of guilty or nolo contendere, a defendant may challenge his conviction if the conviction is in violation of the double jeopardy clause; Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); if the court lacks subject matter jurisdiction over the case; Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628
(1974); or if the statute under which the defendant is charged is unconstitutional. Haynes v. United States, 390 U.S. 85, 87
CT Page 2466 n. 2, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); see 1 Wright, Federal Practice and Procedure: Criminal 2d (1982), Sec. 175, pp. 624-28. (emphasis provided)
This same basic rule is found in State v. Gilnite,202 Conn. 369, 374-375 (1987), where the court stated as follows:
 It is well established that an unconditional nolo contendere plea, when intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars later challenges to pretrial proceedings. State v. Madera, 198 Conn. 92, 97, 503 A.2d 136
(1985); State v. Martin, 197 Conn. 17, 25, 495 A.2d 1028 (1985). Thus, usually only those issues fully disclosed on the record which concern either the court's jurisdiction or the intelligent and voluntary nature of the plea are appealable after a nolo contendere plea has been entered and accepted. State v. Madera, supra, 98; see, e.g., State v. Badgett, 200 Conn. 412, 415-20, 512 A.2d 160, cert. denied, 479 U.S. ___, 107 S.Ct. 423, 93 L.Ed.2d 373 (1986); State v. Godek, 182 Conn. 353, 356, 438 A.2d 114
(1980), cert. denied, 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981); cf. Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
 Note 4. It is also well established that a valid guilty plea waives any objections to nonjurisdictional errors prior to the entry of the plea. J. Bond, Plea Bargaining and the Guilty Plea (2d Ed.) Sec. 7.21. "(A) guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, CT Page 2467 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); ct. Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 78S (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). (emphasis provided)
The parties are in dispute as to whether a claim of a violation of Equal Protection arising out of the selection procedure of a grand jury is a nonjurisdictional defect which therefore may not be raised as an independent claim relating to the deprivation of a constitutional right that occurred prior to the entry of the guilty plea, or whether it is a jurisdictional defect and can later be raised in an independent claim relating to the deprivation of a constitutional right.
Both the Petitioner and the Respondent recognize that a plea of guilty does not preclude review of those defects which relate either to the exercise of jurisdiction of the Court or to the voluntary and intelligent nature of the plea. Craig v. Bronson, 202 Conn. 93, 101, 520 A.2d 155
(1987) State v. Madera, supra; and State v. Gilnite, supra.
The Petitioner initially argues that because a grand jury indictment was a constitutional prerequisite to the prosecution of anyone charged with a crime punishable by death or life imprisonment, it necessarily follows that the failure to obtain a valid indictment deprives the Court of jurisdiction to prosecute such a person, relying on State v. Mitchell, 200 Conn. 323, 326-335, 512 A.2d 140 (1986).
The Court is not persuaded that Mitchell is analagous to the present case. The facts in Mitchell are distinguishable from the facts in the present case in that in Mitchell the defendant was found guilty after a trial. Therefore, the rule that a valid guilty plea waives any objections to nonjurisdictional errors prior to the entry of the plea was not involved in Mitchell.
The Petitioner also relies on State v. Wright,207 Conn. 276, 542 A.2d 299 (1988), in arguing that the court reviewed a challenge to the racial composition of a grand jury on appeal despite the fact that the appellant had pleaded guilty under the Alford doctrine to both parts of the indictment. The petitioner argues that Wright stands for the proposition that the State's alleged failure to draw the Petitioner's grand jury in a nondiscriminatory fashion was the CT Page 2468 type of jurisdictional defect which is reviewable despite the petitioner's plea of guilty.
This Court also finds that Wright is distinguishable from the facts in the present case. In Wright, prior to the start of the defendant's trial, the defendant reserved the right to challenge the grand jury array. Wright, therefore, did not involve a claimed waiver of nonjurisdictional defect. In the Petitioner's present habeas corpus case, there was no preservation of the grand jury claim prior to the entry of a plea of guilty.
This Court initially notes that both State v. Madera, supra, and State v. Gilnite, supra, cited with approval the United States Supreme Court cases of Tollett v. Henderson, Parker v. North Carolina, McMann v. Richardson, and Brady v. United States.
The rationale behind Tollett, Parker, McMann, and Brady was reviewed in Blackledge v. Perry, 417 U.S. 21,40 L.Ed.2d 628, 94 S.Ct. 2098 (1974). The facts in Blackledge were that while serving a term of imprisonment, the prisoner Perry became involved in an altercation with another inmate. A warrant issued charging Perry with the misdemeanor of assault with a deadly weapon. Following a trial without a jury, he was convicted of this misdemeanor and given a six-month sentence. He appealed his conviction. After the filing of the notice of his appeal, he was charged with a felony of assault with a deadly weapon with intent to kill and inflict serious bodily injury. This indictment covered the same conduct for which Perry had been tried and convicted of the misdemeanor. Perry entered a plea of guilty to the felony indictment. Subsequent to his plea of guilty, he filed an application for writ of habeas corpus claiming that the indictment on the felony charge constituted double jeopardy and deprived him of due process of law. In discussing the issue of whether the plea of guilty by Perry to the felony charge precluded him from raising his constitutional claims, the Blackledge court in reviewing Tollett, McMann, Parker and Brady, stated in part as follows:
 The precise issue presented in Tollett was "whether a state prisoner, pleading guilty with the advice of counsel, may later obtain release through federal habeas corpus by proving only that the indictment to which he pleaded was returned by an unconstitutionally selected grand jury." Id. at 260, 93 S.Ct. at 1604. The Court answered that question in the CT Page 2469 negative. Relying primarily on the guilty-plea trilogy of Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; McMann v. Richardson, 397 U.S. 750, 90 S.Ct. 1441, 25 L.Ed.2d 763; and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785, the Court characterized the guilty plea as "a break in the chain of events which has preceded it in the criminal process." Id., 411 U.S. at 267, 93 S.Ct. at 1608. Accordingly, the Court held that when a criminal defendant enters a guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Ibid. Rather, a person complaining of such "antecedent constitutional violations," Id., 411 U.S. at 266, 93 S.Ct. at 1607, is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not "within the range of competence demanded of attorneys in criminal cases." See McMann, supra, 397 U.S. at 771, 90 S.Ct. at 1449.
 Although the underlying claims presented in Tollett and the Brady trilogy were of constitutional dimension, none went to the very power of the State to bring the defendant into court to answer the charge brought against him. The defendants in McMann v. Richardson, for example, could surely have been brought to trial without the use of the allegedly coerced confessions, and even a tainted indictment of the sort alleged in Tollett could have been "cured" through a new indictment by a properly selected grand jury. In the case at hand, by contrast, the nature of the underlying constitutional infirmity is markedly different. Having chosen originally to proceed on the misdemeanor charge in the District Court, the State of North Carolina was, under the facts of this case, simply precluded by the Due Process CT Page 2470 Clause from calling upon the respondent to answer to the more serious charge-in the Superior Court. Unlike the defendant in Tollett, Perry is not complaining of "antecedent constitutional violations" or of a "deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. at 266, 267, 93 S.Ct. at 1607, 1608. Rather, the right that he asserts and that we today accept is the right not to be haled into court at all upon the felony charge. The very initiation of the proceedings against him in the Superior Court thus operated to deny him due process of law. (emphasis provided).
As stated in Tollett v. Henderson:
 But just as the guilty pleas in the Brady trilogy were found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations there, we conclude that respondent's guilty plea here alike forecloses independent inquiry into the claim of discrimination in the selection of the grand jury.
 (7) We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann. (emphasis provided).
As stated in Menna v. New York, 423 U.S. 61,46 L.Ed.2d 195, 96 S.Ct. 241 (1975): CT Page 2471
 A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.
The claim brought by the Petitioner of an alleged invalid indictment does not go to the very power of the State to bring the Petitioner into court to answer the charge against him. It is the type of claim that even if true could have been corrected by a new indictment by a properly selected grand jury. The plea of guilty by the Petitioner forecloses direct inquiry into the merits of a claimed antecedent constitutional violation of discrimination in the selection of the grand jury. The claim of the Petitioner arising out of the selection procedure of his grand jury is a nonjurisdictional defect which is waived as a result of his plea of guilty. As a general proposition, rights guaranteed by federal or state constitutions may be waived. Johnson v. Manson, 195 Conn. 309, 324 (1985).
This Court will therefore not reach the merits of the grand jury selection claim. The claim of the Petitioner is a nonjurisdictional claim which is waived by a valid guilty plea.
Further, this Court will not reach the merits of whether the deliberate bypass standard is applicable as claimed by the Petitioner, or the cause and prejudice standard as claimed by the Respondent, since the Court has ruled that the Petitioner's plea of guilty has foreclosed independent inquiry into the grand jury selection claim.
 II. PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM
 A. STANDARD FOR PETITIONER TO OBTAIN REVIEW OF CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
The threshold issue is whether the deliberate bypass standard or the cause and prejudice standard is the appropriate standard for a Petitioner to obtain review of a of ineffective assistance of trial counsel and/or appellate counsel. This issue was raised in Valeriano v. Bronson, 209 Conn. 75 (1988).
Valeriano teaches that the deliberate bypass standard is the appropriate standard to use and further that CT Page 2472 that standard is automatically satisfied when a claim of ineffective assistance of trial counsel and/or appellate counsel is raised. Valeriano stated in part at page 85 as follows:
 We conclude that when a petitioner raises a claim of ineffective assistance of appellate counsel because his attorney did not raise an issue on direct appeal, the deliberate bypass standard should be utilized. We also conclude that any claim invoking ineffective assistance of appellate counsel automatically satisfies the deliberate bypass requirement. In State v. Leecan, (citations omitted), we decided to permit review of all claims of ineffective assistance of trial counsel in habeas corpus proceedings. In such instances, we assumed the deliberate bypass standard was automatically satisfied. Id. The same posture logically applies to ineffective assistance of appellate counsel claims. Thus, the Petitioner has satisfied the deliberate bypass standard to the extent that his ineffective assistance of appellate counsel claims will be addressed.
It is clear from the above language that the claims of ineffective assistance of trial and/or appellate counsel must be addressed on their merits.
In order to analyze the Petitioner's claim regarding ineffective assistance of counsel, it is necessary to review the constitutional basis for the right to counsel. In Strickland v. Washington, 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052, the court was faced with determining the proper standards for judging a criminal defendant's contention that he had been deprived of the effective assistance of counsel. The Strickland court held in part as follows:
 In a long line of cases that include Powell v. Alabama, . . . this court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the federal CT Page 2473 provisions of the Sixth Amendment, including the Counsel Clause:
 `In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall then previously ascertain by law, and to be informed of the nature and cause of the accusation; to be confronted obtaining witnesses in his favor, and to have the assistance of counsel for his defense.'
 . . . the Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing the role that is critical to the ability of the adversal system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. For that reason, the Court has recognized that `the right to counsel is the right to the effective assistance of counsel.'. . ."
The Strickland court went on to establish a dual requirement of performance and prejudice in order for a conviction to be reversed by stating in part as follows:
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the CT Page 2474 defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (emphasis provided)
In discussing the performance aspect of the claim of ineffective assistance of counsel, the Strickland court stated in part as follows:
 The proper measure of attorney performance remains simply reasonableness under prevailing professional norms . . . . In any case presenting an ineffective claim, the performance inquiry must be whether counsel's assistance was reasonable considering all of the circumstances . . . . Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'. . . There are countless ways to provide effective assistance in any given case . . . . Thus, a court deciding an actual ineffective claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts of omissions of counsel that are alleged not to have been the result of reasonable professional CT Page 2475 judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial tsting process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. (emphasis provided)
The petitioner correctly recognizes that Connecticut has followed the United States Supreme Court decision in Strickland, supra.
B. FACTS RE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM
This Court finds the following additional facts regarding this claim.
The Petitioner, who is Black, was represented by two co-counsel at the time of his grand jury proceedings in 1979. Co-counsel discussed with each other the question of raising a grand jury array challenge and investigated to some extent the feasibility of pursuing such a claim. His co-counsel never discussed the claim with the Petitioner. Co-counsel ultimately decided not to raise a grand jury array challenge because they did not believe the facts would support one and the Petitioner had decided to enter a guilty plea. The Petitioner first learned of the availability of a grand jury array challenge in 1986. The Petitioner would have wanted to challenge the racial composition of his grand jury if he had been aware that he could have made such a challenge.
C. THE PERFORMANCE PRONG
In applying the performance standard, it must be remembered that Strickland teaches that every effort must be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. Counsel's failure to pursue a claim for which there was no reasonable basis in existing law constitutes reasonable conduct under prevailing professional norms. CT Page 2476
In discussing the failure to raise a grand jury claim as it relates to trial counsel, the court in Tollett v. Henderson, 411 U.S. 258, 266, stated in part as follows:
 The principle value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, see Brady v. United States, supra, 397 U.S. at 751-752, 90 S.Ct. at 1470-1471, or by contesting all guilt, see Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury procedures, might be factually supported. (emphasis provided)
In evaluating the conduct of trial counsel's perspective as of 1979, and taking into consideration the fact that all attempts to challenge the New Haven Judicial District's method of grand jury selection were not successful, and further, recognizing that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, this Court holds that the failure of trial counsel to raise a grand jury selection claim was reasonable under prevailing professional norms.
D. THE PREJUDICE PRONG
In this case, the Petitioner has failed to prove CT Page 2477 prejudice.
There was no evidence submitted at the habeas corpus trial that the Petitioner, in fact, was innocent of the charges to which he entered his guilty plea. Even if it is to be assumed that the Petitioner could have successfully raised a challenge to the grand jury selection procedure, this would not have had any effect on the final outcome of the Petitioner's case. The only result of a successful grand jury claim would have been to "delay the inevitable date of prosecution." Tollett, 411 U.S. 266. As stated in Blackledge,417 U.S. 30, "even a tainted indictment . . . could have been `cured' through a new indictment by a properly selected grand jury."
Thus, the result of a successful challenge to the grand jury selection procedure, assuming that a successful challenge could have been made, would only have been to delay the inevitable as a new grand jury could have been selected which would have cured any alleged tainted indictment. Therefore, the Petitioner has failed to prove prejudice from the failure to raise a grand jury selection procedure claim.
The Petitioner therefore has failed to meet either the performance prong or the prejudice prong of Strickland and has therefore failed to prove that his counsel rendered ineffective assistance under the standard of Strickland.
The Petition for writ of habeas corpus is dismissed.
AXELROD, J.